**FROMMELT INDUSTRIES, INC., (by change of name from Dubuque Awning & Tent Co.), an Iowa Corporation, Plaintiff,**

v.

**W. B. McGUIRE CO., INC., a New York Corporation, Defendant.**

No. 80–CV–652.

United States District Court, N. D. New York.

Jan. 9, 1981.

Lloyd C. Root, Chicago, Ill., for plaintiff.

John J. Dee, Bond, Schoeneck & King, Syracuse, N.Y., for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff, Frommelt Industries, Inc., commenced this action on August 8, 1980, against W. B. McGuire Co., Inc., for alleged patent infringement and unfair competition with respect to a fabric-covered, foam pad structure known as "Armor Pleat" which is fastened on either side of a loading dock portal to create an environmental seal between the rear end of a truck and the building while a truck is being loaded or unloaded. Frommelt Industries, Inc. ("Frommelt") is an Iowa corporation having its principal place of business in Dubuque, Iowa. Defendant, W. B. McGuire Co., Inc. ("McGuire") is a New York corporation having its principal place of business in Hudson, New York. This Court has personal jurisdiction over the parties. Subject matter jurisdiction exists under 28 U.S.C. § 1338 and, since there is diversity of citizenship, under 28 U.S.C. § 1332.

This action is now before the Court on Frommelt's motion for a preliminary injunction enjoining McGuire from manufacturing and selling its allegedly similar foam pad covers, known as "Durapleat," and from representing that it is licensed or oth-

erwise authorized to manufacture and sell loading dock pad structures embodying the claims in Frommelt's patent on Armor Pleat. Frommelt does not seek preliminary relief on its claim of unfair competition.

McGuire, while not contesting the validity of Frommelt's patent No. 3,181,205 on the Armor Pleat product, opposes the motion for a preliminary injunction on the following grounds: (1) Frommelt has failed to demonstrate that it will suffer irreparable injury in the event that preliminary relief is not granted; (2) Frommelt has not demonstrated that the accused product is either a literal infringement or the mere equivalent of the invention claimed in its '205 patent, and, therefore, has failed to establish a probability of success on the merits, and (3) the likelihood of Frommelt's ultimate success on the merits of its patent infringement claim is sufficiently diminished by application of the doctrine of file wrapper estoppel and by the evidence regarding the existence of a license in McGuire to manufacture and sell the product claimed in '205 so as to defeat plaintiff's motion for preliminary relief. The Court having heard the testimony of the parties' witnesses at a hearing on September 17, 1980, and having considered the affidavits, exhibits and memoranda filed by the parties, denies plaintiff's motion for a preliminary injunction on the grounds that plaintiff has failed to demonstrate its claim of infringement by evidence of sufficient weight to show a likelihood of success on the merits, and that, in any event, plaintiff has failed to make the requisite showing of irreparable harm.

The '205 patent, entitled, "Pad Structures," was issued on May 4, 1965, to Dubuque Awning & Tent Co., as assignee of the inventors, Cyril P. Frommelt and Sylvan J. Frommelt. By change of name, Dubuque Awning & Tent Co., became Frommelt Industries, Inc., the plaintiff in this action. There is no question that Frommelt is the owner of the '205 patent.

The inventions described in the '205 patent are embodied in Frommelt's Armor Pleat product. Claim (1) of the patent claims a vertical pad structure which is mounted on a rigid backing member and secured to either side of a loading dock doorway to close off the space normally found between the sides of the doorway and the rear end of a truck body during the loading cycle. The vertical pads are comprised of an elongated body of a cellular, resilient, compressible polymer, such as foamed polyether, which is commonly rectangular in cross-section and covered with a fabric on the three exposed sides which overlaps the rigid backing member and is secured thereto.

With these vertical, compressible pads mounted on either side of a loading dock doorway, a truck can be backed snugly against the pad structures to create a seal that prevents the exchange of air outside the building with the air inside either the truck body or the building itself while the truck is being loaded or unloaded. During the loading cycle, however, it is normal for the truck body to move up and down several inches due not only to weight of the material being loaded or removed but also to the use of fork lift trucks which enter the truck body to load or remove the materials. In the absence of some protective covering over the pad structures, this up and down movement of the truck body against the now-compressed foam pad abrades the pad, thereby shortening its useful life. This abrasive effect is heightened by the up and down movement of hinges and sharp corners which, projecting from the rear of the truck body, tend to snag and tear the pad structures.

Plaintiff has solved this problem and has been able to extend the useful life of its pad structures by providing, on the compressed, flat surface of the pad, a series of overlapping flaps or pleats (resembling shingles) which are attached to the pads' cover sheet only along their upper edges. Consequently, as the truck body moves up and down during the loading cycle, the flaps themselves absorb and respond to the vertical movement of the truck and any protruding sharp edges or hinges are also caught by the flaps which, being capable of a certain

vertical mobility, eliminate the abrasion that would otherwise occur directly on the cover sheet. The invention claimed in claim (1) of the '205 patent thus describes an elongated compressible pad mounted on a rigid backing member, with "a cover sheet on said body and extending over said flat face and opposite sides of said body," "and a plurality of flaps of wear-resistant, flexible material attached to said cover sheet on said flat face, said flaps being arranged in a row extending longitudinally of said elongated body. . . ."

Like Frommelt, defendant McGuire has been manufacturing and selling loading dock pads for many years. On August 3, 1977, patent No. 4,038,792 (" '792") entitled, "Wear Protector for Truck Dock Door Seal" was issued to McGuire, as assignee of the inventors, Winston B. McGuire and Stanley Makas. Patent '792 describes a door seal comprised of material-covered compressible pads arranged on the opposite sides and over the top of a loading dock door to provide an environmental seal during the loading cycle. The invention claimed in '792 is a device for reducing the abrasive wear on the covered pads that occurs, as described above, during loading and unloading. The claimed device consists of a facing strip composed of a tough, flexible transparent polymeric sheet material which is hung loosely over and substantially covers the length and width of the covered pad, being attached to the pad's backing member at the top, and also on the sides by means of loose straps wrapping around the elongated pad. Thus loosely attached, the '792 device protects against abrasive wear by providing a face shield capable of sufficient vertical movement independent of the covered pad to absorb the movement and protrusions of the abutting vehicle. In sum, the result achieved by McGuire's '792 patent is substantially similar to that achieved by Frommelt's '205 patent, but the methods by which the two devices achieve that result differ. Indeed, Frommelt does not claim that McGuire's '792 patent infringes on its '205 patent. Rather, the accused product at issue in this case is known as "Durapleat", which McGuire claims differs in construction from its '792 patent but not in its mode of operation.

According to the testimony of Alfred A. Kasper, manager of engineering for McGuire, the company's experience with its '792 clear plastic shield demonstrated that in extremely cold environments (i. e., in temperatures below 0° F.), the shield material becomes brittle and may crack upon impact. Mr. Kasper testified that in 1979 McGuire sought to achieve greater durability for its product by using a vinyl covered fabric instead of the protruded poly-vinyl resin material. Because the vinyl covered fabric is not available in the same thickness as the poly-vinyl resin sheet material, it appeared necessary to join several layers of the vinyl covered fabric together in order to develop a shield of comparable thickness and coverage. McGuire's production process, however, uses heat sealing for all material connections, and this process limits to two the number of layers that may be joined together. Unable to heat seal three layers of the new fabric, McGuire was able to obtain comparable weight and thickness by designing the shield to consist of a single sheet of vinyl covered fabric to which is attached a number of movable vinyl covered material flaps which are heat sealed to the underlying sheet along their top edges. From the exhibits submitted by the parties, it is apparent that McGuire offers its Durapleat product with the same overlap and exposure lengths as are used by plaintiff in its Armorpleat product.

McGuire contends that the superficial similarity resulting from the use of vinyl flaps on its Durapleat product is more than offset for patent purposes by the fact that Durapleat, like Duraface before it, achieves its protective purpose through the vertical movement of the entire shield unit. Plaintiff's Armor Pleat product, it will be recalled, is designed to protect against abrasion by permitting an up and down movement of the overlapping flaps, the cover sheet itself being fastened securely to the foam pad and backing member. This distinction between the operational character-

istics of the two products was supported by the uncontroverted testimony of Alfred Kasper.

■ In order to secure a preliminary injunction in a patent infringement case, plaintiff must make a clear showing of irreparable harm and must demonstrate that the patent involved is "beyond question valid and infringed." *Simson Bros. v. Blancard and Co.*, 22 F.2d 498, 499 (2d Cir. 1927); *accord, Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.*, 443 F.2d 867, 871 (2d Cir. 1971). Here, plaintiff's '205 patent was held valid by a federal court in 1972, and defendant McGuire does not challenge that holding.

■ There is considerable dispute, however, on the question of infringement. Plaintiff contends that Claim (1) of its '205 patent reads directly on Durapleat, the accused product. However, the Court's examination of the language of the claim, which includes a limitation that the flaps are attached to the cover sheet, leaves room for considerable doubt whether the accused product constitutes a literal infringement. In contrast to the language in claim (1) of the '205 patent, the overlapping flaps on the accused structure are attached to an intermediate protective sheet, which sheet is then loosely draped over the fabric-covered, compressible posts.

■ Apart from literal infringement, plaintiff also relies on the doctrine of equivalents to demonstrate a probability of success on the merits. Stated briefly, the doctrine of equivalents is designed to discourage patent fraud by permitting the patentee to recover against the producer of a device which, "performs substantially the same function in substantially the same way to obtain the same results." *Graver Tank Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed.2d 1097 (1950), quoting, *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147. Based on the

evidence adduced at the hearing in this matter, the Court finds that the elements of the doctrine of equivalents have not been satisfied. While it is true that defendant's Durapleat product uses overlapping flaps and is designed to protect the compressible doorway seals from abrasive wear, the uncontroverted testimony and affidavits submitted by McGuire demonstrate that the Durapleat product is designed to, and does in fact permit vertical movement of the flap-covered intermediate sheet as a single unit; on this evidence, any movement of the individual flaps may properly be characterized as incidental to the design and the result achieved. Since the evidence does not support a finding of functional similarity between the accused product and the '205 patent, the doctrine of equivalents is unavailable to plaintiff for the purpose of preliminary relief.[1]

As an independent ground for decision in this matter, the Court finds that plaintiff has failed to make a clear showing of irreparable harm in the absence of preliminary injunctive relief. *See Foundry Services v. Beneflux Corp.*, 206 F.2d 214 (2d Cir. 1953). Plaintiff's papers as well as the testimony of Robert J. Frommelt, the executive vice-president of Frommelt Industries, attest that the damages sought to be recovered in this action are measurable by the lost sales attributable to defendant's marketing of the allegedly infringing product. On this record there is no reason to suppose that monetary damages will be unascertainable in the event that plaintiff succeeds on the merits of this litigation. As the Second Circuit noted in *Foundry Services, supra*, 206 F.2d at 216, the fact that continued competition pending trial may dampen plaintiff's sales does not constitute irreparable injury, for such losses, if wrongful, can be adequately redressed by money damages.

■ Nor is this a situation where preliminary relief may be justified on the ground

---

1. In light of these findings on the issues concerning literal infringement and the doctrine of equivalents, it becomes unnecessary to address defendant's claims concerning the application

of file wrapper estoppel and the existence of a license to manufacture and sell the product claimed in the '205 patent.

that the alleged infringer is, or is about to become insolvent. At the hearing in this matter, McGuire's general manager testified that the company has assets in excess of $3,000,000, annual net sales of approximately $10,000,000, and liabilities of $500,-000. In light of plaintiff's estimated damages of $60,000 for allegedly infringing sales over an eleven month period, McGuire appears financially able to meet the demands of any judgment in this action. Under these circumstances, the Court sees no reason to depart from the generally accepted rule that a defendant's demonstrated ability to compensate plaintiff in money damages cautions strongly against the issuance of a preliminary injunction. *See Nuclear-Chicago Corp. v. Nuclear Data, Inc.*, 465 F.2d 428 (7th Cir. 1972); *Tyrolean Handbag Co. v. Empress Handbag, Inc.*, 122 F.Supp. 299, 302 (S.D.N.Y.1954).

Finally, unlike the situation in *Premo Pharmaceutical Lab. v. USV Lab, Inc.*, 481 F.Supp. 193 (S.D.N.Y.1979), aff'd., 615 F.2d 1351 (2d Cir. 1979), the evidence in this case does not warrant a finding that McGuire is attempting to obtain a free ride on plaintiff's financial investment in its '205 product and to get the jump on other potential competitors just prior to the expiration of plaintiff's patent. Significant in this regard is the fact that McGuire had been manufacturing its operationally similar Duraface product for several years before its introduction of the accursed Durapleat product. Apart from mere speculation, there is no evidence in this record concerning the nature of the competition in the field of truck doorway seals here involved, and, therefore, no basis for a finding that the denial of a preliminary injunction will encourage other, perhaps less solvent manufacturers to enter the market to plaintiff's disadvantage. *Cf. Zenith Laboratories, Inc. v. Eli Lilly & Co.*, 460 F.Supp. 812, 826 (D.N.J.1978) (preliminary injunction granted in part on finding that absent such relief, the challenge to a commercially successful patent will result in rapid market entry by other generic houses).

For all of the foregoing reasons, plaintiff's motion for a preliminary injunction is denied. The foregoing memorandum constitutes this Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.