**SMITH INTERNATIONAL, INC., a California corporation, Plaintiff-Appellee,**

v.

**HUGHES TOOL COMPANY, a Delaware corporation, Defendant-Appellant.**

**Appeal No. 83–677.**

United States Court of Appeals, Federal Circuit.

Oct. 6, 1983.

Certiorari Denied Nov. 28, 1983. See 104 S.Ct. 493.

See also, 664 F.2d 1373.

Britton A. Davis, Chicago, Ill., argued for defendant-appellant. With him on brief were Edward A. Haight, Dorsey L. Baker, Chicago, Ill., Robert A. Felsman, Fort Worth, Tex., and David Brice Toy, Los Angeles, Cal.

James W. Geriak, Los Angeles, Cal., argued for plaintiff-appellee. With him on brief were Douglas E. Olson, Robert C. Weiss, Coe A. Bloomberg, Los Angeles, Cal., and John W. Schneller, Washington, D.C.

Before BENNETT, Circuit Judge, SKELTON, Senior Circuit Judge, and MILLER, Circuit Judge.

SKELTON, Senior Circuit Judge.

This is an appeal from an order of the United States District Court for the Central District of California, which denied a motion of defendant-appellant Hughes Tool Company (Hughes) for the entry of a preliminary injunction against plaintiff-appellee, Smith International, Inc. (Smith) to prevent the further infringement by Smith of two patents owned by Hughes, which the Ninth Circuit Court of Appeals had previously declared valid, and which Smith had admitted it had infringed and was continuing to infringe. For reasons stated below, we reverse the decision of the district court and remand the case with instructions to issue the preliminary injunction.

## BACKGROUND

This action has a rather lengthy history, extending over a period of some eleven years. It is necessary to trace this history carefully, because some of the events that transpired during the course of the litigation are persuasive as to the proper disposition of the case. The original complaint was filed by Smith on June 2, 1972, when it brought a declaratory judgment action contesting the validity of Galle Patent No. 3,397,928 (the "928 patent"), issued to Hughes as assignee. Hughes counterclaimed for damages, alleging that Smith had infringed the '928 patent, as well as Galle Patent No. 3,476,195 (the "195 patent"), which was also issued to Hughes as assignee. Smith then asserted the invalidity of both the above patents as an affirmative defense to the counterclaims.

Both of the patents at issue in the declaratory judgment action involve the design of "rock bits", which are earth boring tools used in the rotary drilling of oil and gas wells. The bits were designed by Edward M. Galle, an employee of Hughes, in an effort to extend the lifespan of rock bits exposed to the high temperatures and stresses created in the drilling of oil wells. This goal was achieved by mounting the bit cutting elements on a journal or roller bearings and sealing the bearings with an O-ring compressed by at least ten percent. A one-way pressure relief valve was employed to prevent pressure buildup in the sealed bit. These design changes resulted in a substantial lengthening of the lifespan of the bits. The '928 patent was granted in 1968 and the '195 patent in 1969.

In its "Answer And Counterclaims Including Supplemental Counterclaim" in the declaratory judgment action dated June 9, 1976, Hughes made the following allegation in pertinent part:

"12. Plaintiff has infringed, and still is infringing each of said Letters Patent Nos. 3,397,928, 3,476,195 ... by making, selling and using rock bits, including rock bits identified as plaintiff's 'F' series solid journal bearing bits embodying each of the patented inventions and will continue to do so unless enjoined by this Court."

In "Plaintiff's Answer to Defendant's Counterclaim," dated July 2, 1976, Smith answered the above allegation:

"Answering paragraph 12, plaintiff admits that it has manufactured and sold, and is still manufacturing and selling devices coming within the terms of certain of the claims of said U.S. Patents 3,397,928 and 3,476,195, but denies that it is infringing any of defendant's rights because said patents are invalid and therefore incapable of infringement." Thus, Smith's defense to the counterclaims was based solely upon its contention of invalidity, while it admitted that it manufactured and sold devices coming within the claims of Hughes' patents. This position is further reflected by the following portions of a Pre-Trial Conference Order, dated March 6, 1975:

"The following facts are admitted and require no proof:

\*      \*      \*      \*      \*      \*

III

\*      \*      \*      \*      \*      \*

4. Claims 1, 2 and 7–10 of U.S. Patent 3,397,928, if valid and enforceable, cover rock bits made and sold by Smith.

5. Claims 1, 2, 3 and 11 of U.S. Patent 3,476,195, if valid and enforceable, cover rock bits made and sold by Smith.

IV

The parties have no reservations with respect to the admitted facts specified in paragraph III."

A Supplement to the Pre-Trial Conference Order dated December 1977, contains the following provision:

"3. It having been admitted that some rock bits of plaintiff are within the scope of some claims of U.S. Patent Nos. 3,397,928 and 3,476,195, any other issues relating to the matter of infringement, except as set forth in item 2 herein, are deferred to an accounting proceeding, if such proceeding takes place."

The issues as framed by the pleadings and pre-trial orders included several questions concerning the validity of the subject patents, and the question of whether Smith's infringement was willful and deliberate, but the *fact* of infringement, if the patents were determined to be valid, was not an issue to be tried. However, at trial, some revealing information was proved about the design and construction of the Smith "F series" bit. Smith's Vice President of Research and Development, Lloyd Garner, testified that he was aware of the Hughes patents, and that he instructed a Smith engineer, William Robinson, to design a bit which contained features similar to those of the subject patents. He also testified that he was aware of the possibility of infringing the patents by making these bits. Robinson testified that as a result of those instructions the "F series" bit was designed, which included the same features as the Hughes bit. He stated that Garner told him to design a bit similar to the Hughes bit.

On November 30, 1979, the United States District Court for the Central District of California held that the '928 patent and the '195 patent were invalid and dismissed Hughes' counterclaims. The Court of Appeals for the Ninth Circuit reversed this decision, declaring both patents to be valid, reinstating Hughes' counterclaim for infringement, and remanding the cause for further proceedings on the counterclaim. *Smith International Inc. v. Hughes Tool Company,* 664 F.2d 1373 (9th Cir.), *cert. denied,* 456 U.S. 976, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982).

Following remand to the district court, Hughes moved for entry of judgment in its favor, contending that Smith had admitted infringement of both patents. Hughes also sought a preliminary injunction to prevent

further infringement by Smith. The district court declined to enter judgment, but acknowledged Smith's admission of infringement in the following statement in its order of October 6, 1982.

The Court agrees that the language of these orders [the previous pre-trial orders] indicates that plaintiff has, in fact, conceded liability on the question of infringement and that plaintiff has agreed that determination of the scope of the infringement and the amount of damages could be deferred to an accounting proceeding. Nevertheless, the Court declines to enter judgment in favor of defendant at this time. The Court finds it appropriate, rather, to proceed to a determination of the nature and the scope of plaintiff's infringement before entering judgment. Recognition of the binding effect of the two pre-trial orders discussed above does mean, however, that plaintiff may not contend in subsequent proceedings that it has in no way infringed the two patents at issue.

The court denied Hughes' request for a preliminary injunction, because it considered Smith's admission of infringement to be too general to meet the requirement of specificity for injunctive relief under Fed.R.Civ.P. 65(d). Hughes sought to overcome this defect by filing a "Motion for Preliminary and Permanent Injunction, or in the Alternative, for Reconsideration of Order of October 6, 1982." In a proposed order, it recited Claim 1 of the '928 patent and stated that Smith had infringed the patent "by making, using and selling rock bits of the type specified in the aforesaid Claim 1." The proposed order also recited the fact that the Ninth Circuit Court had declared the '928 patent to be valid and enforceable, and stated that continued infringement by Smith would result in irreparable harm to Hughes. In addition, Hughes presented portions of the record from the trial, which had not been considered by the court when it denied Hughes' first motion for an injunction. This evidence was intended to demonstrate the scope of infringement by Smith.

Because of the presentation of evidence, the district court viewed the motion as one for partial summary judgment, apparently on the issue of the *extent* of Smith's infringement. Because the motion was not presented *as* one for summary judgment, the court declined to grant the motion, holding in an order dated December 15, 1982, that the extent of Smith's infringement must be determined by trial or motion for summary judgment before an injunction could issue. However, the court specifically rejected Smith's argument that there had been no determination of infringement. Hughes has appealed from this order denying its motion for a preliminary injunction.

## GROUNDS FOR GRANTING PRELIMINARY INJUNCTIONS

The constitutional provision, which is the basis of patent law, grants Congress the power to award "inventors the exclusive right to their ... discoveries." U.S. Const. art. 1, § 8, cl. 8. Congress has exercised this power by enacting the Patent Statute, which provides that patents shall have the attributes of personal property (35 U.S.C. § 261) and grants to the patentee the right to exclude others from making, using or selling the invention for a period of seventeen years (35 U.S.C. § 154). The grant of a patent is the grant of the right to invoke the state's power in order to exclude others from utilizing the patentee's discovery without his consent. *Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 135, 89 S.Ct. 1562, 1582, 23 L.Ed.2d 129 (1969); *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 229, 84 S.Ct. 784, 787, 11 L.Ed.2d 661, *reh. denied,* 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964); *Continental Paper Bag Co. v. Eastern Paper Bag Co.,* 210 U.S. 405, 430, 28 S.Ct. 748, 756, 52 L.Ed. 1122 (1908). Protection of this right to exclude has been provided by Congress through 35 U.S.C. § 283, *inter alia,* which provides that injunctions may be granted under the principles of equity to "prevent the violation of any rights secured by patent, on such terms as the court deems reasonable." Without this injunctive power of the courts, the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution and Congress, to promote the progress of the useful arts,

would be seriously undermined. The patent owner would lack much of the "leverage," afforded by the right to exclude, to enjoy the full value of his invention in the market place. Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research. *See* I. KAYTON, KAYTON ON PATENTS, ch. 1, pp. 17–20 (1979).

However, courts have over the years developed a reluctance to resort to preliminary injunctions in patent infringement cases, and have constructed a rather strict standard for the granting of this form of equitable relief. It is generally recognized that the grant or denial of a preliminary injunction in a patent case is a matter committed to the sound discretion of the district court. *Pacific Cage and Screen Co. v. Continental Cage Corp.,* 259 F.2d 87, 88 (9th Cir.1958); *Superior Electric Company v. General Radio Corp.,* 194 F.Supp. 339 (D.N.J.) *aff'd,* 321 F.2d 857 (3rd Cir.), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659, *reh. denied,* 376 U.S. 973, 84 S.Ct. 1134, 12 L.Ed.2d 88 (1964). The standard for granting such relief has been characterized as "unusually stringent." *Rohm & Haas Co. v. Mobil Oil Co.,* 525 F.Supp. 1298, 1302 (D.Del.1981). A preliminary injunction will normally issue only for the purpose of preserving the status quo and protecting the respective rights of the parties pending final disposition of the litigation. *Superior Electric Company v. General Radio Corp., supra.* The usual requirement of a showing of probability of success on the merits before a preliminary injunction will issue has historically been even stronger in a patent case. Besides having to prove title to the patent, it has been stated as a general proposition that the movant must show that the patent is beyond question valid and infringed. *Mayview Corp. v. Rodstein,* 480 F.2d 714, 717 (9th Cir.1973);

*Bose Corporation v. Linear Design Labs, Inc.,* 467 F.2d 304, 307 (2d Cir.1972); *Eli Lilly and Company v. Generix Drug Sales, Inc.,* 460 F.2d 1096, 1099 (5th Cir.1972); *Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.,* 443 F.2d 867, 871 (2d Cir.), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156 (1973). In order to meet the burden of showing validity, the movant has sometimes been required to show either that his patent has previously been adjudicated valid, that there has been public acquiescence to its validity, or that there is conclusive direct technical evidence proving its validity. *Carter Wallace Inc. v. Davis Edwards Pharmacal Corp., supra,* at 871–874; *Jenn-Air Corporation v. Modern Maid Company,* 499 F.Supp. 320, 323 (D.Del.), *aff'd,* 659 F.2d 1068 (3rd Cir.1981). However, other courts have employed a less stringent standard of proof on the issue of validity. *See Eli Lilly and Co. v. Premo Pharmaceutical Labs.,* 630 F.2d 120, 136 (3rd Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *Tyrolean Handbag Co. v. Empress Hand Bag, Inc.,* 122 F.Supp. 299, 302 (S.D.N.Y.1954). The basis for the more severe rule appears to be both a distrust of and unfamiliarity with patent issues and a belief that the ex parte examination by the Patent and Trademark Office is inherently unreliable. Duft, *Patent Preliminary Injunctions and the United States Court of Appeals for the Federal Circuit,* 65 J.Pat.Off.Soc'y # 131 (1983).[1]

As with preliminary injunctions in other types of cases, the movant is also required to demonstrate in a patent case that he will suffer immediate irreparable harm if the injunction is not granted. *Singer Co. v. P.R. Mallory & Co., Inc.,* 671 F.2d 232, 234 (7th Cir.1982). Some courts refuse to find irreparable injury where the alleged infringer is solvent and money will adequately compensate the injury. *Nuclear-Chicago Corp. v. Nuclear Data, Inc.,* 465 F.2d 428 (7th Cir.1972); *Rohm & Haas Co. v. Mobil Oil Corp., supra* at 1307; *Jenn-Air*

---

1. It has been asserted that a hearing on a motion for a preliminary injunction is not the proper place to make a showing on absolute proof of likelihood of success. *See,* Duft, *supra.* However, we do not find it necessary to decide that question, nor the question of the proper standard of proof, because we find that Hughes has met even the more stringent standard.

Corp. v. Modern Maid Co., supra at 333. However, at least one court is of the opinion that where the showing on patent validity is very strong, invasion of the inventors right to exclude granted by the patent laws should be sufficient irreparable harm without a showing that the infringer is financially irresponsible. Zenith Laboratories, Inc. v. Eli Lilly and Co., 460 F.Supp. 812 (D.N.J.1978).

■ Finally, where relevant, the court should take into account both the possibility of harm to other interested persons from the grant or denial of the injunction, and the public interest. Eli Lilly and Co. v. Premo Pharmaceutical Labs., supra at 136. In reaching its decision, the district court must consider the above factors and balance all of the elements. No one element will necessarily be dispositive of the case. Id. at 136.

■ On appeal, the scope of review of a district court's decision involving the denial of an injunction is narrow. One denied a preliminary injunction must meet the heavy burden of showing that the district court abused its discretion, committed an error of law, or seriously misjudged the evidence. Eli Lilly and Co. v. Premo Pharmaceutical Labs., supra at 136. The district court's discretion is not absolute, however, and must be measured against the standards governing the issuance of injunctions. Singer Co. v. P.R. Mallory & Co., Inc., supra at 234; Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Products, Inc., 545 F.2d 1096, 1097 (7th Cir.1976). Where a case for a temporary injunction is clearly made out, it is not open to the trial court to deny the remedy. Western Electric Co. v. Cinema Supplies, Inc., 80 F.2d 106, 110 (8th Cir. 1935). It is under this standard of review that we now undertake to examine the District Court's denial of a preliminary injunction in the instant case, being mindful of the fact that we now have exclusive juris-

diction over appeals from orders granting or denying injunctions in patent cases. 28 U.S.C. 1292(a)(1) and (c)(1), as amended by The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 125, 96 Stat. 36.

## THE VALIDITY OF THE HUGHES PATENTS

As noted above, the Court of Appeals for the Ninth Circuit held that both the '928 patent and the '195 patent were valid, reversing the district court's holdings to the contrary. Smith International, Inc. v. Hughes Tool Co., supra. This holding was made despite arguments of invalidity by Smith on the basis of obviousness under 35 U.S.C. § 103, anticipation by prior art under 35 U.S.C. § 102, and failure to properly claim the invention under 35 U.S.C. § 112. The Ninth Circuit Court had the benefit of the contentions and arguments of Smith, a party whose interest animated its search for the best prior art and case law to support its position of invalidity, and still the court found the patents valid. The United States Supreme Court denied certiorari. Thus, the validity of the Hughes patents has been adjudicated by a competent appellate court, which we assume considered all possible grounds for invalidating the patents, and yet it rejected them all.

## THE INFRINGEMENT OF THE HUGHES PATENTS

■ In its brief and in oral arguments, Smith steadfastly denied that it had infringed the Hughes patents. It argued that there has been no finding of infringement by any court, that its former admissions are stale, and that, in any event, the admissions did not specify any particular product of Smith that infringed the patents, but only admitted "claim coverage" by unspecified devices.[2]

■ Smith's arguments are unconvincing. In our view, the record establishes the

---

2. It is elementary that the metes and bounds of a patent right are defined by the claims of the patent, and that if the accused matter falls within the claims, literal infringement is made out. Laser Alignment, Inc. v. Woodruff & Sons, Inc., 491 F.2d 866 (7th Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113

(1974); Strumkis v. U.S., 200 Ct.Cl. 668, 474 F.2d 623, cert. denied, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472, reh. denied, 414 U.S. 1147, 94 S.Ct. 902, 39 L.Ed.2d 103 (1974). Therefore, an admission of "claim coverage" is an admission of literal infringement.

*fact* of infringement beyond all question. As the pleadings quoted above reveal, Smith never denied that its F series bits infringed the claims of the Hughes patents. It never denied that it would continue to make and sell these bits unless enjoined by the court. Instead, it relied solely upon its contention that the patents were invalid. As the Pre-Trial Conference Order reveals, Smith had no reservation about admitting that it manufactured and sold rock bits coming within the claims of the Hughes patents. The Ninth Circuit Court's decision removed any question about the validity and enforceability of the patents. Therefore, we have before us a clear admission that Smith makes and sells bits falling within the claims of Hughes' patents. Smith's failure to deny Hughes' allegations that Smith's F series bits infringed the Hughes' patents, and that it intended to continue making and selling them also amounts to an admission of infringement under Fed.R.Civ.P. 8(d). Even the district court recognized that Smith had "conceded liability on the issue of infringement." It stated that Smith would not be allowed to contend that it had in no way infringed the patents. Order of October 6, 1982.

The inclusion of Smith's admissions in the district court's pre-trial orders amounts to an adjudication that Smith had infringed the patents. Under Fed.R.Civ.P. 16, those orders controlled the subsequent course of action, unless modified. Here, no modification occurred. Those orders were merged into the final declaratory judgment of the district court. *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). No issue relating to infringement was appealed by Smith to the Ninth Circuit Court, thus rendering the district court's adjudication of infringement final and conclusive. *Richardson v. Communications Workers of Amer. AFL–CIO,* 486 F.2d 801, 804 (8th Cir.1973); *Atchison, Topeka and Santa Fe Railway Co. v. Jackson,* 235 F.2d 390, 392 (10th Cir.1956). We see no reason why any further adjudication on the *fact* of infringement is needed.[3]

■■■ The district court, while recognizing that infringement occurred, nonetheless declined to grant an injunction until the *extent* of the infringement was shown. We have found no case in our research that places such a burden on one seeking a preliminary injunction in a patent infringement case, and none has been cited to us. Such a requirement would make the standard practically impossible to meet. This inquiry is better left for the accounting proceeding, and the district court erred in making such a requirement of Hughes.[4]

Thus, the decisions on validity and infringement weigh heavily in Hughes' favor on the injunction issue before us. This is so even though these two issues, validity and infringement, have historically made preliminary injunctions difficult to obtain in patent cases.

## IRREPARABLE HARM

■■■ As mentioned above, some courts will not find irreparable harm to exist without a showing of financial irresponsibility. In this case, no such showing exists. However, none of the cases we have reviewed in which injunctions were denied for lack of irreparable harm involved such a strong showing of validity and infringement as exists in the instant case.[5] Courts faced

---

3. The reinstatement of the Hughes counterclaim by the Ninth Circuit Court, and its remand for further proceedings, in no way indicates that the court viewed the fact of infringement as an open question. In our view, the "further proceedings" provision in the remand order refers to an accounting proceeding and a consideration of the matter of a permanent injunction. No further proceedings are necessary on the issue of whether infringement occurred.

4. As noted above, the district court viewed the Hughes motion as one for summary judgment

because Hughes presented evidence on the scope of infringement. Had the district court not stated in its previous order of October 6, 1982, that it would not grant an injunction before determining the scope of infringement, Hughes would have had no reason to present such evidence. The source of confusion about the Hughes motion was the district court's erroneous requirement of proof of the extent of infringement.

5. *See generally, Singer Co. v. P.R. Mallory & Co., Inc., supra; Rohm & Haas Co. v. Mobil Oil Corp., supra; Frommelt Industries, Inc. v. W.B.*

with strong showings of validity and infringement, on the other hand, have found irreparable harm from continued infringement of a valid patent. *Zenith Laboratories, Inc. v. Eli Lilly and Co., supra* at 825 (where validity is very strong, invasion of the right to exclude is sufficient irreparable harm); *Teledyne Industries, Inc. v. Windmere Products, Inc.,* 433 F.Supp. 710, 741 (S.D.Fla.1977) (to permit infringement during pendency of suit would be to grant a license valid as long as the infringer could contest the suit, and encourage others to infringe as well). We agree with the reasoning in these cases. The very nature of the patent right is the right to exclude others. Once the patentee's patents have been held to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights. The infringer should not be allowed to continue his infringement in the face of such a holding. A court should not be reluctant to use its equity powers once a party has so clearly established his patent rights. We hold that where validity and continuing infringement [6] have been clearly established, as in this case, immediate irreparable harm is presumed.[7] To hold otherwise would be contrary to the public policy underlying the patent laws.

■ Upon balancing the requisite factors, we hold that the district court erred in denying Hughes' motion for a preliminary injunction. It committed a clear error of law in requiring proof of the extent of infringement prior to granting the preliminary injunction. The extent of infringement relates to damages and is a question to be determined at the trial on the merits. In addition, there do not appear to be any equitable considerations in this case that could in any way offset the strong showing of validity and infringement made by Hughes, coupled with the presumption of irreparable harm. Smith argues that public policy and the balance of hardship are in its favor, because it is a substantial competitor and has on hand a large inventory of the rock bits at issue here, and it would be unfair to disrupt its activities with an injunction. But it is clearly established that Smith knew of the Hughes patents when it designed the F series bits and took a calculated risk that it might infringe those patents. It instituted this action in an attempt to invalidate its competitor's patents, and, having failed, it will not now be heard to say that public policy is in its favor. To the contrary, public policy favors protection of the rights secured by the valid patents. Under these circumstances, we hold that the denial of a preliminary injunction was based on a clear error of law and constituted an abuse of discretion.[8]

*McGuire Co., Inc.,* 504 F.Supp. 1180 (N.D.N.Y. 1981); *Jenn-Air Corporation v. Modern Maid Co., supra; Superior Electric Co. v. General Radio Corp., supra.*

6. Even if Smith's admissions are not interpreted as indicating an intention to infringe in the future, the showing of past infringement has been strong enough to justify a finding of probable future infringement. *See Aluminum Extrusion Company v. Soule Steel Company,* 260 F.Supp. 221, 225 (C.D.Cal.1966).

7. This is the rule in copyright cases. *See,* Duft, *supra* at n. 64 and cases cited therein. Our holding on this issue does not abrogate the traditional requirement of a showing of irreparable harm by one seeking a preliminary injunction. As noted above, the trial court should balance the requisite factors. In cases where the showing of validity and infringement is less forceful than it is here, or in cases where equitable or public policy considerations are in favor of the infringer, a movant would have to make a stronger showing of irreparable harm in order to tip the balance of equity in his favor.

8. Though the parties and the district court treated the matter as involving a "preliminary" injunction, and we have reviewed the case in those terms, we intend no implication that a patentee is not entitled to a permanent injunction against the infringer in the case upon final judicial determination that the involved patent is valid and has been infringed by that infringer. Such an injunction prohibits infringement by any product, not just those involved in the original suit. The burden of avoiding infringement at the risk of contempt falls upon the one enjoined.

## CONCLUSION

The decision of the district court is reversed, and the cause is remanded with instructions to issue an appropriate preliminary injunction enjoining Smith International, Inc. from infringing claim 1 of the '928 patent on such terms as are deemed proper by the district court.

REVERSED AND REMANDED.