In re COLE PATENT LITIGATION.

RCA CORPORATION, Plaintiff,

v.

HAZELTINE CORPORATION, Defendant.

LEAR SIEGLER, INC., Plaintiff,

v.

RCA CORPORATION, Defendant.

Civ. A. Nos. 79–243, 79–491.

United States District Court, D. Delaware.

July 24, 1984.

William Wade, Richards, Layton & Finger, Wilmington, Del., John Farley, William Gilbreth, Norman Beamer, Fish & Neave, New York City, Albert Russinoff, RCA Corp., Princeton, N.J., for RCA.

James L. Holzman, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., Edwin L. Hartz, Christie, Parker & Hale, Pasadena, Cal., for Lear Siegler.

Daniel F. Wolcott, Jr., Potter, Anderson & Corroon, Wilmington, Del., Dana M. Raymond, James M. Maune, Brumbaugh, Graves, Donohue & Raymond, New York City, for Hazeltine.

Richard L. Sutton, Thomas Reed Hunt, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., John F. Pritchard, Winthrop, Stimson, Putnam & Roberts, New York City, for Esprit Systems, Inc.

## MEMORANDUM OPINION

STAPLETON, Chief Judge.

### I. THE INFRINGEMENT ISSUE

This Court held (1) that the Cole patent was anticipated by Dirks and accordingly invalid, and (2) that the accused devices would infringe the Cole patent if it were valid. 558 F.Supp. 937. RCA appealed from the determination of invalidity; HLA did not appeal from the determination that the accused devices fell within the scope of the Cole patent claims. The Court of Appeals for the Federal Circuit reversed the determination of invalidity and "remanded for consideration, if appropriate, of ... [certain] counts which were not tried."[1] 730 F.2d 1440.

Hazeltine and Lear Siegler now assert before this Court (1) that the Court of Appeals construed the Cole patent claims differently than this Court did, (2) that the accused devices do not infringe the claims as construed by the Court of Appeals, and (3) that they are entitled to relitigate the infringement issue in this Court. I conclude that this argument is neither legally nor factually sound.

Hazeltine and Lear Siegler had a full and fair opportunity to litigate in this Court the scope of claims, their validity, and the infringement of the accused terminals. They had the opportunity thereafter to appeal the adverse determination of the infringement issue and to argue that there was no way to distinguish Dirks which does not also distinguish the accused devices and require a finding of non-infringement. Even without appealing the adverse infringement determination, at the time this case was before the Court of Appeals, Hazeltine and Lear Siegler could have urged non-infringement as an alternate ground for supporting the validity of the judgment in their favor. They did argue that acceptance of RCA's interpretation of the scope of the claims would be inconsistent with a finding of infringement. The Court of Ap-

1. The "counts" referred to have now been resolved as a result of a settlement between RCA and ADDS.

peals nevertheless adopted RCA's interpretation of the claims as well as of Dirks. Moreover, its opinion reveals no inconsistency between its conclusion that Dirks does not anticipate and this Court's conclusion that the accused devices fall within the scope of the claims.

■ This Court's determination that the accused devices fall within the scope of the Cole patent claims, standing unreversed as it does, bars Hazeltine and Lear Siegler from relitigating the issue of infringement. Any other conclusion would permit the kind of piecemeal litigation of patent cases which the Court of Appeals of the Federal Circuit condemned in the analogous case of *Perkins-Elmer Corporation v. Computervision Corporation*, 732 F.2d 888 (Fed.Cir. 1984). In short, a trial court should make a determination of both validity and infringement, as this Court did, and one appeal should suffice to correct any error.

Even if I were empowered to reconsider the infringement issue with the enlightenment supplied by the Court of Appeals, however, I would not reach a conclusion different from the one I originally reached. The Court of Appeals found that Dirks did not anticipate Claim 1 because it taught no structure which performed the function of "generating position counts." It reached a similar conclusion with respect to Claims 2 and 3, because Dirks disclosed no "generating means ... for digitally generating a video system." If one accepts my prior holding that the *combination* of the ROM and the shift register in the HLA terminals is the equivalent of the digital-to-video generator of Cole, there is nothing in the Court of Appeal's anticipation analysis which is in any way inconsistent with the analysis leading to my infringement holding. Since I remain of the view that the shift register is properly considered a part of the digital-to-video generator,[2] if I were to reexamine the infringement issue, I would again conclude that the accused devices infringe.

2. The Court of Appeals said nothing inconsistent with this view and the majority's tacit rejection of HLA's argument that RCA's claim construc-

## II. RELIEF AGAINST HAZELTINE AND LEAR SIEGLER

RCA seeks an injunction against the manufacture, use or sale of the accused devices, as well as an order requiring an accounting. Hazeltine and Lear Siegler insist that an injunction is not appropriate because RCA has failed to show that, absent an injunction, it will suffer irreparable injury in the last three months of the life of the patent.

■ RCA's application is not one for a preliminary injunction. The validity of the Cole patent and infringement by the accused terminals has been judicially determined after a trial on the merits. The Court of Appeals for the Federal Circuit has recently explained that once the patentee's rights have been held to be valid and infringed, the threat of continued infringement is alone sufficient to warrant injunctive relief. In *Smith Intern, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir.1983) it succinctly stated the rule which must govern here:

> The very nature of the patent right is the right to exclude others. Once the patentee's patents have been held to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights. The infringer should not be allowed to continue his infringement in the face of such a holding. A court should not be reluctant to use its equity powers once a party has so clearly established his patent rights. We hold that where validity and continuing infringement have been clearly established, as in this case, immediate irreparable harm is presumed. To hold otherwise would be contrary to the public policy underlying the patent laws.

Since Hazeltine and Lear Siegler point to no competing equities sufficient to override

tion would require a finding of non-infringement suggests that it shared this view.

the policy thus articulated,[3] I will enter an appropriate injunction.[4]

### III. RCA'S MOTION TO JOIN ESPRIT SYTEMS, INC. ("Esprit")

■ It may well be that Esprit is a successor in interest to Hazeltine which is bound by determinations in this action whether or not it is joined as a party defendant. I am unpersuaded, however, that its presence in this case at this juncture would facilitate the conduct of the litigation. RCA can obtain complete relief with respect to all terminals which have been adjudicated to be infringing from Hazeltine without Esprit's participation. It can secure any relief to which it is entitled with respect to any other Esprit terminals in a separate proceeding. Esprit's presence here would only be a complicating factor in this litigation and this litigation should be concluded as soon as possible. For these reasons, RCA's motion to join Esprit will be denied.

These findings and the judgments entered contemporaneously do not dispose of the recently filed motion of Lear Siegler pursuant to Rules 59 and 60.

---

**3.** The fact that Lear Siegler may suffer adverse economic effects from an injunction does not provide a ground for the denial of an injunction. As stated in *Smith Intern., supra,* 718 F.2d at 1581:

> Smith argues that public policy and the balance of hardship are in its favor, because it is a substantial competitor and has on hand a large inventory of the rock bits at issue here, and it would be unfair to disrupt its activities with an injunction. But it is clearly established that Smith knew of the Hughes patents when it designed the F series bits and took a

calculated risk that it might infringe those patents. It instituted this action in an attempt to invalidate its competitor's patents, and, having failed, it will not now be heard to say that public policy is in its favor. To the contrary, public policy favors protection of the rights secured by the valid patents.

**4.** Petitions for certiorari are currently pending and it is suggested the injunctive relief should await a ruling thereon. I interpret the Court of Appeal's denial of HLA's motion to stay its mandate to be inconsistent with such an approach.