**AUGAT, INC., Plaintiff,**

v.

**JOHN MEZZALINGUA ASSOCIATES, INC., Defendant.**

**No. 82–CV–1465.**

United States District Court, N.D. New York.

June 13, 1986.

Weingarten, Schurgin, Gagnebin & Hayes, Boston, Mass., Martin, Ganotis & Brown, Syracuse, N.Y., for plaintiff; Paul J. Hayes, Victor B. Lebovici, Boston, Mass., David E. Brown, Syracuse, N.Y., of counsel.

Amster, Rothstein & Ebenstein, New York City, Bond, Schoeneck & King, Syracuse, N.Y., for defendant; Joel E. Lutzker, New York City, George H. Lowe, Syracuse, N.Y., of counsel.

## MEMORANDUM DECISION

MUNSON, Chief Judge.

In this action for patent infringement, plaintiff now moves for a preliminary injunction restraining defendant corporation from manufacturing, using or selling the coaxial connector which plaintiff alleges infringes the patent currently held by plaintiff identified as U.S. Patent No. 4,346,958 [the "'958 patent"]. For the reasons which follow a preliminary injunction will issue upon plaintiff's posting of a bond pursuant to Rule 65(c), Fed.R.Civ.P.

Plaintiff holds a patent for coaxial connectors used in the community antenna television (CATV) industry for coupling coaxial transmission cables. This action was commenced in December 1982 under 35 U.S.C. § 271 and § 281 to enjoin defendant from infringing two of plaintiff's patents and for damages. The application for the '958 patent at issue in the present motion was filed on October 23, 1980 and the patent was issued on August 31, 1982. Plaintiff asserts that it introduced its patented connector to the market in December 1979; plaintiff alleges that defendant copied the design of plaintiff's connector in 1980 and thereafter introduced the allegedly infringing connector in the market. Plaintiff moves for a preliminary injunction

to prevent defendant's future infringement of plaintiff's rights under the '958 patent.

The standard for issuance of a preliminary injunction pursuant to 35 U.S.C. § 283 as set by the Federal Circuit[1] requires the court to consider the following factors in evaluating the patentee's request for the exercise of the court's equitable powers:

(1) Irreparable harm,

(2) Balance of hardships between the parties,

(3) Likelihood of success on the merits, and

(4) public interest.

*Roper Corp. v. Litton System, Inc.*, 757 F.2d 1266, 1269 (Fed.Cir.1985); *Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 400 (Fed.Cir.1986).

Plaintiff argues that the continued infringement of its patent by defendant until a trial and judgment in this court constitutes irreparable harm for which an injunction should issue to prevent defendant's future infringement. Irreparable harm will be presumed where a holder of a patent presents a strong showing of likelihood of success on the merits. *See Roper*, 757 F.2d at 1271. Therefore, the court will first consider whether plaintiff is likely to succeed on its claim of infringement of the '958 patent.

Plaintiff holds the '958 patent and argues that defendant's coaxial converter, introduced into the market after plaintiff's product, is a copy of plaintiff's patent. If plaintiff proves this at trial, plaintiff will prevail on its patent infringement claim. Defendant asserts that its two-piece coaxial connector does not infringe plaintiff's patent and argues that plaintiff's patent is not valid.

Plaintiff's position with respect to its allegation that defendant's coaxial connector infringes plaintiff's patent is extremely strong. A comparison between claim 1 of the '958 patent and defendant's connector indicates that defendant's connector incorporates each element of claim 1 and, therefore, constitutes a literal infringement of plaintiff's patent. Therefore, plaintiff has made a very strong showing that plaintiff is likely to succeed on its claim of infringement at trial.

As a defense to plaintiff's claim of infringement defendant seeks to establish that the patent is invalid because of (1) obviousness under 35 U.S.C. § 103, and (2) sales by plaintiff more than one year prior to plaintiff's application for the patent under *id.* § 102(b). Plaintiff is entitled to a statutory presumption that its patent is valid which must be overcome by defendant by clear and convincing evidence. *RCA Corp. v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 1444 (Fed.Cir.), *cert. dismissed*, 468 U.S. 1228, 105 S.Ct. 32, 82 L.Ed.2d 923 (1984). Here the apparent demonstrated commercial success of both the patented and the asserted infringing product militate toward a finding of validity. *See Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed. Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Defendant points to a prior art Magnovox UMP connector, manufactured by defendant's predecessor in interest, to argue that the '958 patent is obvious. Plaintiff's connector has a mandrel which is *fixed* in the entry barrel with a pusher member that moves with respect to the fixed mandrel. In contrast, the UMP connector has a *moveable* mandrel and a pusher member that moves *with* the mandrel rather than *with respect to* the mandrel. The court cannot conclude that claim 1 of the '958 patent is obvious in relation to the prior art.

Defendant argues that it intends to prove that plaintiff sold the patented product more than one year prior to the date on which plaintiff applied for the patent October 23, 1980. Plaintiff denies that it sold its patented connector prior to October 23, 1979. Defendant has asserted prior sales

---

**1.** Pursuant to 28 U.S.C. § 1292(c)(1), the law of the Federal Circuit controls in this court's determination of the patentee's request for injunctive

relief. *See Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1579 (Fed.Cir.1983).

by plaintiff as a defense but does not advance this argument in opposition to plaintiff's motion for a preliminary injunction. Additionally there has been no evidence presented to date indicating any likelihood that plaintiff has engaged in these prior sales. Though defendant has had a long-outstanding motion to compel production of documents including sales documents of plaintiff for the years 1979 and 1980, plaintiff has made available to defendant sales documents for 1980. To date defendant has not availed itself of the opportunity to examine these documents. Though 1980 sales documents would not directly establish sales more than one year prior to the application date, they would very likely lead defendant to customers whom defendant could then depose to learn whether plaintiff had made any sales to them of the patented product prior to October 23, 1979. The court assumes this is defendant's intended use of the 1980 sales documents which form part of defendant's motion to compel. Defendant's failure to marshall factual support for its argument that plaintiff sold the patented product more than one year prior to applying for the '958 patent should work some estoppel on defendant's argument that prior sales make the patent invalid. At this point in time, therefore, it appears highly likely that plaintiff will be able to prove at trial that no prior sales of its patented product were made and, therefore, the patent is valid.

Where a holder of a patent makes a strong showing of the likelihood of success on the merits of its claim of infringement and validity of a patent, irreparable harm is presumed. *See Roper,* 757 F.2d at 1271. Unlike the more usual case in which courts inquire into whether money damages will adequately compensate an injured plaintiff, patents are afforded special protection. *See id.* at 1269 & n. 2; *Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233 (Fed.Cir.1985). The issuance of a patent includes a grant to the patentee of the "right to exclude others from making, using or selling the invention." *Smith,* 718 F.2d at 1577. To allow an infringer to continue to infringe a patent for years until

a case can be tried, particularly in a district with an excessive caseload, backlog of cases ready for trial, and now under a directive to schedule no civil jury trials until October, such a delay amounts to an involuntary license by the patent holder whereby defendant gets to use the patent for a protracted period with only the possible threat of paying money damages for the infringement at the time judgement is entered after trial. *See id.* at 1581; *Teledyne Industries, Inc. v. Windmere Products, Inc.,* 433 F.Supp. 710, 741 (S.D.Fla. 1977). This delay operates in clear derogation of the Patent Statute's protection of the right to exclude. *See Smith,* 718 F.2d at 1581. It is not necessary that there first have been a conclusive determination as to a patents' validity before a preliminary injunction is issued, *Atlas Powder,* 773 F.2d at 1233; a strong showing as made here is sufficient to support the granting of this interim relief to the patentee. Therefore, in this case plaintiff meets the requirement of demonstrating the existence of irreparable harm from defendant's future infringement of plaintiff's '958 patent by defendant's continued manufacture and sale of the coaxial connector.

In balancing the hardships as between the plaintiff and defendant, defendant argues that defendant will suffer greater financial hardship than plaintiff if a preliminary injunction were issued by this court because it would necessitate possible layoff of some of its employees and idling the equipment which is used to manufacture defendant's infringing connector. In addition, defendant argues that not issuing the preliminary injunction will not harm plaintiff because plaintiff will continue to enjoy large sales as it has experienced to date. However, the court recognizes injury to the plaintiff in reduced sales which are a direct result of defendant's infringement of plaintiff's patent rights. The two coaxial converters manufactured by the parties to the instant litigation are in direct competition. Though defendant argues that other companies' coaxial connectors compete with

their products, it appears to the court that plaintiff's volume of sales are more directly affected adversely by defendant's sales than by sales by the other "competitors." Defendant has no legal right to continue to profit from sales which appear at this stage in the litigation to infringe plaintiff's patent. *See Atlas Powder,* 773 F.2d at 1232. To the extent the preliminary injunction poses a hardship to defendant because it has become excessively dependent on sales of its coaxial connector this poses no bar to the issuance of an injunction where it appears that these sales infringe plaintiff's patent rights. *See id.* Rather, halting defendant's unauthorized use of plaintiff's patent is consistent with the Federal Circuit's view that trespasses should be halted "cold turkey." *See id.*

The public interest in a patent case is strongly weighted toward protecting the rights of patent holders. *See Smith,* 718 F.2d at 1581. Defendant argues that the public interest is in favoring free and full competition. Generally, this is so in our free market system, but patents are a clear exception to this rule: patent law protects inventors in assuring that inventors and patent holders will enjoy financial protection in marketing their invention. *See id.* at 1577–78.

The evidence presented to date indicates a very strong likelihood that plaintiff will prevail at trial on its claim that defendant has infringed the '958 patent validly held by plaintiff. This likelihood combined with the certainty that defendant will continue to manufacture and sell its apparent infringing product comprises irreparable harm. The balance of hardships and consideration of the public interest do not tip the scales to any significant degree. The competing equities establish that plaintiff is entitled to a preliminary injunction preventing defendant's violation of plaintiff's '958 patent.

On the issue of the amount of a bond required for the issuance of a preliminary injunction, defendant has stated that it anticipates sales of its coaxial connector for the upcoming year in the amount of $1.8 million. Plaintiff suggests an estimated liberal profit margin of 20% be employed to estimate anticipated damages to defendant in the event the preliminary injunction is later found to have been issued improperly. Defendant has not contested this 20% figure for use in determining the amount of the bond to be posted by plaintiff. Accordingly, pursuant to Rule 65(c), Fed.R.Civ.P., as a condition precedent to the issuance of the preliminary injunction plaintiff shall post a bond in the amount of 20 percent of defendant's anticipated lost sales of $1.8 million which computes to $360,000.

## ORDER

Plaintiff's motion for a preliminary injunction prohibiting defendant from the further manufacture, use and/or sale of defendant's two-piece coaxial connectors accused of infringement of U.S. Patent 4,346,958 pending final judgment in this action is granted. Plaintiff shall post a bond pursuant to Rule 65(c), Fed.R.Civ.P., in the amount of $360,000. The Clerk is directed to provide notice to defendant upon plaintiff's posting of the bond which shall cause the preliminary injunction to take effect.

Defendant's outstanding motion to compel production of documents is denied.

Discovery in this case shall be completed by September 12, 1986. A final pre-trial conference will be held on Friday, September 26, 1986 at 11:00 a.m. in Syracuse, New York, for the purpose of setting a date for trial; it is the court's intention to schedule trial to commence in mid-October 1986.

IT IS SO ORDERED.