SUN STUDS, INC., Plaintiff,

v.

ATA EQUIPMENT LEASING, INC., an Oregon corporation, Applied Theory, Inc., an Oregon corporation, and United States Natural Resources, a Delaware corporation, Defendants.

Civ. No. 78–714–RE.

United States District Court,

D. Oregon.

March 4, 1987.

William A. Birdwell, Spears, Lubersky, Campbell, Bledsow, Anderson & Young, Don H. Marmaduke, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for plaintiff.

David W. Axelrod, Schwabe, Williamson, Wyatt, Moore & Roberts, Robert L. Harrington, Portland, Or., for defendants.

## OPINION

REDDEN, Judge:

Plaintiff Sun Studs, Inc. filed this action in 1978 against defendants. The trial was trifurcated. Phase 1 concerned issues of patent validity and infringement. Phase 2 concerned plaintiff's claims for misappropriation of confidential information and common law copyright infringement, as well as plaintiff's and defendant Applied Theory's claims for breach of contract. Phase 3 was to determine damages.

The jury returned its special verdict for phase 1 on December 1, 1986. It found that all of the patent claims in suit are valid. It found infringement of these patent claims by certain of the representative sawmills and veneer mills, and no infringement by others. It also found that defendants Applied Theory and ATA Equipment Leasing, Inc. (ATA) are the alter ego of defendant U.S. Natural Resources, Inc. (USNR). USNR was found not to have induced infringement, but to have contributed to their infringement. ATA was found to have induced or contributed to infringement of the McCloud and Dillard mills.

The jury also determined in phase 1 that laches did not apply to plaintiff's claims as to veneer mills, but did apply as to sawmills. The jury found that estoppel did not

apply to either type of mill. Finally, it determined that none of the infringements were willful.

Phase 2's special verdict was entered December 17, 1986. The jury found that Applied Theory breached the 1971 contract between itself and Sun Studs by use of the SIMPX program, but by no other means. It also found that Sun Studs breached both the 1971 and 1973 contracts with Applied Theory by failing to timely pay 50% of all license fees received by it from licensing of the Sohn et al. U.S. Patent No. 3,852,579. A breach of a common law confidential relationship was charged to Applied Theory, but the claim was declared barred by the statute of limitations. Finally, the jury found that Applied Theory committed common law copyright infringement by use and dissemination of the SIMPX program, and that this claim was not barred by the statute of limitations.

The jury entered its special verdict on phase 3 on February 6, 1987. It found total damages for defendants' patent infringements to be $710,000. It further found damages for Applied Theory's contract breach to be $10,000, and damages for the common law copyright breach to be $10,000. Applied Theory's damages for breach of contract were determined to be $309,629.36.

The parties have agreed to the entry of a partial judgment, which will incorporate the jury's three verdicts. They also agree that several issues will be dealt with after the entry of the partial judgment: plaintiff's request for increased damages pursuant to 35 U.S.C. § 284; plaintiff's and defendants' requests for prejudgment interest; plaintiff's request for attorneys' fees pursuant to 35 U.S.C. § 285; plaintiff's and defendants' requests for costs; and plaintiff's request for an injunction against use of the SIMPX program. The parties also agree that the time for filing of motions for judgment notwithstanding the verdict will be ten days from the entry of this partial judgment.

The parties dispute whether an injunction should enter at this time, and if so, what its scope should be. If an injunction does enter, the defendants move that it be stayed in whole or in part pursuant to Fed.R.Civ.P. 62(c).

I conclude that an injunction is now appropriate, and that it should be stayed only in certain specified areas as explained below.

## DISCUSSION

### A. *The Partial Judgment*

The jury has found that Sun Studs' patents are valid, and that several of them have been infringed by defendants' systems. The trial was before a jury, and their findings are accorded deference. Protection against possible future infringements is urged as the reason for an injunction. An injunction is appropriate.

Defendants challenge the scope of the injunction sought by plaintiff. Plaintiff seeks to enjoin the infringement of its patents not only by means which are the same as or no more than colorably different than the apparatus or processes found to have infringed; they seek to enjoin acts of infringement "including, without limitation" those means. The requested injunction is too broad.

In *KSM Fastening Systems v. H.A. Jones Co.*, 776 F.2d 1522 (Fed.Cir.1985) the Federal Circuit reviewed a district court's finding of contempt for violating a consent decree. The court noted:

> The unreasonableness of a decree incorporating a vague or broad prohibition against 'infringement' of a 'patent' is alleviated because of the universal rule, to be addressed *infra*, that contempt proceedings, civil or criminal, are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements of the patent.

*Id.* at 1526. This strikes the proper balance between allowing one found to have infringed the opportunity to design around the patent, and preventing further infringement by the same device or one no more than colorably different. *Id.* The point is reinforced:

Turning first to the question of the judgment of contempt itself, we agree, of course, that the issue in contempt proceedings is violation *vel non* of the injunction, not patent infringement. Nevertheless, devices which could not be enjoined *as infringements* on a separate complaint cannot possibly be deemed enjoined *as infringements* under an existing injunction in contempt proceedings ... Infringement is the *sine qua non* of violation of an injunction against infringements.

*Id.* at 1528 (emphasis in original).

The court held the district court was in error in finding contempt without first finding that the accused device is an infringement. *Id.* at 1532. It therefore vacated the contempt judgment and remanded. *Id.*

■ I see no good purpose in imposing an injunction broader than the matters which have been litigated in this action. If defendants infringed one of plaintiff's patents by a means not colorably the same as those here involved, I could not find contempt without a prior finding that the new device infringed. The just completed trial would not help in determining whether this finding should be made, given that a device not even colorably the same would be involved. I might be unable to enter such a finding absent a trial on the merits.

■ Defendants raise another issue: the appropriateness of imposing an injunction when a reasonable or established royalty has already been assessed for the use of the patents. They argue that the assessment of damages based on a reasonable or established royalty creates a license for future as well as past use. However, such damages do not cover future use. 4 Deller's Walker on Patents, § 398 (1965). The only practical protection which plaintiff has for future infringement is an injunction.

Issues are also raised as to whether an injunction against infringement prohibits Applied Theory from providing incidental maintenance and support services, and whether it prohibits delivery and installation of systems to its customers which were earlier ordered and are nearly completed. Although both are covered by the injunction, it will be stayed in these areas.

■ If use of a device constitutes an infringement, then the maintenance or repair of the device is an infringement, since it perpetuates the infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484–85, 84 S.Ct. 1526, 1530–31, 12 L.Ed.2d 457 (1984). Thus, if use of the systems supplied by Applied Theory to its customers constitutes an infringement, then Applied Theory's maintenance and service support infringe. Thus, an injunction against infringement includes a prohibition of maintenance and service work.

■ Similarly, delivery or installation of an infringing system is generally the time when all of the apparatus elements of the patent claim are first constructed and ready for use. The law of this case is that this is the moment of infringement. Hence, an injunction against infringement includes a prohibition of delivery or installation of infringing systems, even though most of the work on them was completed prior to the partial judgment and prior to the entry of the verdict in phase 1.

## B. *Motion for Stay of the Injunction*

Defendants move to stay the injunction against infringement, in its entirety, pursuant to Fed.R.Civ.P. 62(c). Rule 62(c):

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

■ Four requirements must be met for a stay under Rule 62(c) to be imposed: (a) that the applicant make a strong showing that he is likely to succeed on the merits of the appeal; (b) that the applicant establish that unless a stay is granted he will suffer irreparable injury; (c) that no substantial harm will come to other interested parties; and, (d) that a stay would do no harm to

the public interest. 11 Wright & Miller, Federal Practice and Procedure: Civil § 2904. No one of these factors alone dictates the result; rather, the court considers all of the factors and balances the equities presented by the particular set of facts. *Kawecki Berylco Industries, Inc. v. Fansteel, Inc.*, 517 F.Supp. 539, 540 (E.D.Pa. 1981).

**(1)** *Defendants' Likelihood of Success*

■ Defendants' probabilities of success on appeal are difficult to estimate. Given the broad areas of fact and law involved in this case it may be that defendants have a significant chance of prevailing on some issues in their appeal. I am hesitant however to state that Sun Studs will not be able to support the jury's verdict. Therefore, I conclude that defendants' likelihood of success is more than negligible but less than certain.

**(2)** *Irreparable Injury to Defendants*

■ Defendants make a strong showing that they will suffer irreparable injury if the stay is not granted. William Bolton, president of Applied Theory, asserts that an important factor in marketing XY chargers is a steady market presence. Customer confidence is key, and absence from the market for a period of one or two years would hurt Applied Theory, not only because profits would be lost during that time, but because customers would tend to remain with their new supplier. Furthermore, three employees would have to be terminated by Applied Theory. To get back into the market, new employees would have to be hired and trained, and an immense marketing and advertising program launched. Even if Applied Theory were to prevail on appeal, their absence from the market will, by then, leave them with a greatly diminished market share.

As to small log mills, an injunction would probably eliminate at least two jobs: an engineer and a fabricator. Also, jobs would be lost from past customers. Both veneer and sawmill systems would be hurt by the fact that mill owners prefer to purchase all of their automated systems from a single vendor. Thus, Applied Theory's absence from the market will have effects beyond the immediate sales lost. Finally, Bolton states that it might be difficult to find a machine manufacturer, since manufacturers would convert their manufacturing to alternative systems in Applied Theory's absence.

Sun Studs responds that this last assertion is based on poor economics. I agree. Once Applied Theory returned to the market, no reason is shown why manufacturers would not be ready to convert their manufacturing to Applied Theory's system.

Plaintiff's other responses rely on *Windsurfing Intern. Inc. v. AMF, Inc.*, 782 F.2d 995 (Fed.Cir.1986) for the proposition that an injunction should not be denied even though the enjoined party will be put out of business.

The framework of the *Windsurfing* decision is important. It stated that 35 U.S.C. § 283 "makes clear that the district court's grant or denial of an injunction is within its discretion depending on the facts of each case." *Id.* at 1002. It found that it was an abuse of discretion on the facts of that particular case to deny an injunction. Important facts of that particular case were that the patents in suit were valid, and infringed. *Id.* at 1003.

The facts of the present case must be considered uncertain as to whether all of plaintiff's patents in suit are valid and whether all of those found infringed were in fact infringed. To the degree that it is likely that the patent claims will be found valid and infringed, Applied Theory's showing of hardship is merely their just desserts for having elected to build much of their business on infringing products. However, to the degree that Applied Theory is likely to prevail on appeal, I must recognize the strength of its showing of hardship. Since it has made a very strong showing of irreparable harm, and it has some likelihood of success on the merits, I include this factor in Applied Theory's favor in balancing the four factors.

**(3)** *Substantial Harm to Other Interested Parties*

■ Plaintiff Sun Studs argues that it will be harmed by a stay of the injunction.

Furthermore, it argues that where both validity and infringement have been clearly established, irreparable harm is presumed. *Datascope Corp. v. Kontron Inc.*, 786 F.2d 398, 400 (Fed.Cir.1986).

Defendants argue that Sun Studs is not entitled to the presumption of harm, and that it in fact is not harmed. They emphasize that the royalty payments which the jury found defendants to owe Sun Studs are greater than the payments due from Coe Manufacturing. Thus, they conclude, Sun Studs would actually benefit by any success which Applied Theory might have in competing with Sun Studs' licensee, Coe. This argument is sufficient to rebut the presumption of harm to Sun Studs, but only as to its interest in license fee payments.

Sun Studs also suffers another form of harm. It has a contractual duty to Coe to defend the validity of the patents licensed to Coe and to defend them against infringement. Thus, Sun Studs has an interest grounded in this duty to defend against any potential infringement by defendants.

Furthermore, Sun Studs is not the only interested party who will suffer substantial harm from a stay. Coe bargained for exclusive patent rights, and hopes to profit by its sole possession of those rights. While Coe must expect competition from alternative, noninfringing devices, it has a right to expect no competition from infringing devices, unless it chooses to grant a license. Thus, to the degree that Sun Studs is likely to prevail on appeal, I must recognize that Coe as well as Sun Studs would suffer substantial harm by the granting of the stay.

### (4) *Harm to the Public Interest*

■ Plaintiff argues that there is a public interest in preserving patent monopolies. I agree. *Smith Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir.1983). Thus, I recognize in plaintiff's favor that to the extent plaintiff is likely to succeed, the granting of a stay would undercut the public interest in preserving respect for patents.

Defendants urge a countervailing public interest in making technology available to third parties. They point to the existing veneer chargers and small log mills of their customers to whom they have already sold. Any customers seeking to update the software in their systems could only do so through Applied Theory, because the software programs are licensed between Applied Theory and the customer only. Thus, an injunction covering such updating would merely remove the benefit of this technology from the public.

Plaintiff notes that Coe is ready to enter this field. Although it admits that Coe could not do such work as economically as Applied Theory, it would be done.

Applied Theory's argument has a point, but I conclude that the public interest tips in favor of plaintiff.

Balancing these four factors, I conclude that a general stay of the injunction is not appropriate.

### C. *Systems on which Substantial Work has been Performed*

■ I noted above that delivery and installation by Applied Theory to its customers of systems which are nearly completed would constitute an infringement. *See supra*, page 1017. Nevertheless, defendants argue that a stay of the injunction as to three specific projects which are nearly completed is appropriate, using the four factor test under Rule 62(c). I agree.

Applied Theory received an order on September 10, 1986, for retrofitting the Roseburg Quad Sawmill with the Real Shape program, before phase 1 of this action began. It ordered the equipment for the project in December 1986, and the equipment has been shipped to Roseburg Lumber.

Roseburg submitted another order to Premier Gear & Machine Company on October 15, 1986. Premier Gear soon placed a subcontract with Applied Theory. Applied Theory has ordered and received all materials and equipment required to perform its subcontract, and all of the software is completed except the installation and construction of a relay cabinet. Ship-

ment is expected shortly, and Applied Theory has already committed over $50,000 for materials for this project.

Boise Cascade at Kettle Falls also has a pending order with Applied Theory. Negotiations were held in October 1986 and the order made on December 8, 1986.. Other vendors are involved in this project who are relying on Applied Theory to begin its work. The Kettle Falls mill is scheduled for shutdown in June 1987, and the shutdown has already been agreed to by the labor union.

As to these projects, there is no difference in defendants' likelihood of success or the public interest in upholding patents. However, the second and third factors tip significantly more in defendants' favor than they did for the motion for a general stay.

Defendants' irreparable injury is particularly great because of the time and resources already committed to these projects. Should defendants ultimately prevail on appeal, the losses from being prohibited from completing these projects would be great.

The substantial harm to other interested parties is different as well. Roseburg Lumber and Boise Cascade are certainly affected. Coe's vice president acknowledges that Applied Theory could complete projects such as the three mentioned more cheaply than Coe. Roseburg Lumber and Boise Cascade would, absent a stay, suffer substantial harm by having to complete their projects at additional cost and additional time. This is an important factor to weigh.

The Premier Gear project involves an order for a new XY veneer system. The jury found that a reasonable royalty for a new veneer system was $25,000 per system. The Roseburg Lumber at Dillard and Boise Cascade at Kettle Falls projects are retrofits to existing sawmills. The jury found that a reasonable royalty for such retrofits was $5,000 per system. It is appropriate to impose royalties as a condition of granting the stay as to these projects. Thus, defendants must pay $25,000 to plaintiff for the right to complete the Pre-

mier Gear project, and $5,000 each for the right to complete the Dillard and Kettle Falls projects.

Given the different equities involved in considering these three projects, I find that a stay of the injunction is appropriate as to them.

D. *Service Maintenance and System Troubleshooting*

 I stated above that maintenance or repair of systems whose use infringes plaintiff's patents is itself an infringement. *See supra*, page 1017. However, the injunction should be stayed as to such service maintenance and system troubleshooting, pursuant to Rule 62(c).

Bolton states that Applied Theory has sold over 200 computerized process control systems. To support these systems, Applied Theory maintains a 24–hour hotline connecting its customers' mills to four staff members. Such support is very important to the mills. The loss due to untimely breakdown of a computer control system is frequently many thousands of dollars per hour.

To assure proper support, Applied Theory assures that at least one of the four staff persons on call is intimately familiar with and trained in the operation of every process control system which has been installed by Applied Theory. They have all received special training. The mill owners, to further insure speedy repair, maintain an inventory of parts and replacement electronics so that the support service can be provided by telephone.

Applied Theory does not directly profit from the sale of maintenance services and support. Bolton characterizes it as a necessary evil because of the costliness to the mills of down time. Third parties such as Coe would likely not find the provision of such services profitable either, as to these systems already sold by Applied Theory. Thus, the third factor in the Rule 62(c) analysis is different than for the stay in general, because Coe lacks a large interest in taking over this service work.

Even more importantly, the various mills with existing systems sold by Applied Theory are interested third parties who will suffer very substantial harm were they forced to endure long periods of down time while a new service provider learned how to service Applied Theory's systems. Their interest must be considered. Because balancing of this consideration leads me to believe that a stay is improper within this domain, I grant the motion to stay as to service maintenance and troubleshooting.

## CONCLUSION

I find that it is appropriate to include an injunction as part of the partial judgment. This is the only practical way to protect plaintiff from future infringements. The scope of the injunction should only include means which were found by the jury to infringe plaintiff's patents, or means no more than colorably different than these. Infringement by any other means could not be enforced by a judgment of contempt without a finding that these new and not colorably similar means infringed. Such a finding could not be lightly made, and thus a broad injunction would serve no useful purpose.

An injunction against infringement includes a prohibition of the delivery and installation of infringing systems already largely completed. It also includes a prohibition of service maintenance and system troubleshooting on infringing systems. However, I stay this injunction under Rule 62(c) to allow Applied Theory to deliver and install the three named systems; and also stay the injunction under Rule 62(c) to allow Applied Theory to continue its service maintenance and system troubleshooting work.

I deny defendants' motion for a general stay.