·WE CARE, INC., a South Dakota corporation, Plaintiff,

v.

ULTRA–MARK INTERNATIONAL CORPORATION, a Minnesota corporation; Steven E. Hemping, an individual; Marco Associates International; Bruce Gibis, an individual; Seifert Sales, Inc., a Minnesota corporation; and Lloyd A. Leirdahl, an individual, Defendants.

3–89 CIV 532.

United States District Court, D. Minnesota, Third Division.

Dec. 13, 1989.

Merchant & Gould by John A. Clifford, Minneapolis, Minn., and Zarley, McKee, Thomte, Voorhees & Sease by Mark Frederiksen, Omaha, Neb., appeared on behalf of plaintiff.

Kinney & Lange, P.A. by David R. Fairbairn and Thomas J. Stueber, Minneapolis, Minn., appeared on behalf of defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER

ALSOP, Chief Judge.

### I. FINDINGS OF FACT

#### A. *The Parties*

1. Plaintiff We Care, Inc. is a corporation organized under the laws of the State of South Dakota and has a regular and established place of business at Pierre, South Dakota.

2. Plaintiff is the assignee of U.S. Letters Patent No. 4,798,916 ("the '916 patent") duly and legally issued on January 17, 1989 for an invention entitled "Safety Plate for Electrical Outlet." The '916 patent includes eight claims, one of which is an independent claim.

3. Defendant Ultra–Mark International Corporation is a corporation organized under the laws of the State of Minnesota and had a regular and established place of business at Excelsior, Minnesota at the time of filing and service of the complaint in this action.

4. Defendant Steven E. Hemping is president of Ultra–Mark International Corporation and resided in Plymouth, Minnesota at the time of filing and service of the complaint of this action.

5. Defendant Marco Associates International is a company having a regular and established place of business at Eden Prairie, Minnesota.

6. Defendant Bruce Gibis does business as Marco Associates International and is a resident of Eden Prairie, Minnesota.

7. Defendant Seifert Sales, Inc. is a Minnesota corporation having a regular and established place of business at Eden Prairie, Minnesota.

8. Defendant Lloyd A. Leirdahl is an officer of Seifert Sales, Inc. and resides in Eden Prairie, Minnesota.

9. None of the defendants has contested service of the complaint, venue, personal jurisdiction or the jurisdiction of this court to decide this matter.

10. Plaintiff is a relatively small company formed by the two inventors of the '916 patent and the wife of one of the inventors. Except for manufacturing, plaintiff regularly conducts business out of the home of one of the inventors. The plaintiff has been manufacturing and selling the outlet covers described in the '916 patent under the name "Care Cover" since October, 1987. Currently, plaintiff markets approximately 4,000 outlet covers per month.

#### B. *The Patent–in–Suit*

11. The '916 patent is directed to a childproof electrical outlet cover having a pair of slidable panels which cover the receptacles of an electrical outlet to prevent children from inserting foreign objects into the outlet. The outlet cover is also directed to energy efficiency in its use of a back plate which holds the slidable panels against the cover plate and prevents air infiltration through the outlet cover.

12. On October 19, 1987 application Serial No. 109,758, which later issued as the '916 patent, was filed with eight claims.

13. The first Office Action by the Patent Office was mailed on September 22, 1988 wherein claims 1–7 were allowed and claim 8 was rejected. Claim 8 was rejected under 35 U.S.C. § 112, first paragraph, because the Examiner could find no specific comment in the specification as to how the gasket was affixed in position on the outlet cover.

14. In response to the first action, an amendment was filed on September 27, 1988 wherein none of the claims were amended, but several typographical errors were corrected in the specification. A single sentence was added to the specification to describe the method of affixing the gasket in position on the outlet cover, as shown in the drawings.

15. In response to the amendment, the United States Patent Office allowed all of the claims in the application, without amendment to the wording of any of the claims.

16. U.S. Patent No. 4,798,916 issued on January 17, 1989.

### C. *Development of Defendants' Product*

17. In October, 1987 the plaintiff began manufacturing and marketing its invention under the name "Care Cover." The product was marketed with the notice "Patent Pending" identified on all packaging.

18. During the summer of 1988, Mr. Bruce Gibis of Marco Associates International and Mr. Lloyd Leirdahl of Seifert Sales contacted plaintiff with respect to marketing of the "Care Cover."

19. Mr. Gibis and Mr. Leirdahl introduced Mr. Hemping to plaintiff because the plaintiff did not have the financial resources necessary to develop the product for immediate mass marketing and production.

20. In a letter to plaintiff dated August 18, 1988 Mr. Hemping indicated that a company "to be named Ultra–Mark Corporation will be established to market, sell and manufacture the Care Cover product line" as outlined in his "Letter of Intent."

21. On September 1, 1988 plaintiff met with Mr. Hemping and Mr. Leirdahl, at which time Mr. Hemping was given additional samples of the Care Cover, and discussions followed with respect to the large numbers of products which would be sold.

22. Negotiations between Mr. Hemping and plaintiff continued until September 28, 1988 when Mr. Hemping wrote a letter to plaintiff terminating such negotiations. Talks continued between plaintiff and Mr. Gibis and Mr. Leirdahl.

23. Mr. Engel and Mr. Weiger, of plaintiff, spoke with Mr. Gibis and Mr. Leirdahl in late October and indicated that a patent had been allowed on the patent application which covered the invention.

24. On November 10, 1988 Mr. Gibis sent plaintiff a letter terminating negotiations with plaintiff.

25. In August, 1989 plaintiff discovered that Ultra–Mark Corporation was marketing the "Shock Block" and a complaint for patent infringement was filed soon thereafter.

### D. *Prior Art*

26. In the prosecution of the patent application for U.S. Patent No. 4,798,916 the Examiner reviewed and considered each of the following patents:

| | |
|---|---|
| 2,477,803 | Huber |
| 2,710,382 | Fitzpatrick et al. |
| 2,820,842 | Meistrell |
| 3,068,442 | Kubik et al. |
| 3,222,631 | Cohen |
| 3,865,456 | Dola |
| 4,094,569 | Dietz |
| 4,293,173 | Tricca |
| 4,600,258 | Hu |
| 4,640,564 | Hill |

27. The defendant cites an additional patent as being pertinent: the Hoessel patent, No. 2,455,582, which shows a safety electric wall plate which includes a disk which may be rotated so as to align apertures and allow a plug to be inserted in an electrical socket.

28. Photographs of the defendants' product, along with assembled and disassembled specimens of defendants' and plaintiff's product, were presented to the court.

29. Claim 1 of the '916 patent recites the following structure, with parenthetical comments concerning the defendants' accused structure:

  a. a cover plate having a pair of vertically aligned openings therethrough, the openings located so as to be centered over the receptacles of an outlet when the cover plate is fastened thereto (admitted by defendants);

  b. said cover plate having a front surface, rearward surface, and a rearwardly projecting lip extending around the perimeter thereof (admitted by defendants);

  c. the rearward surface of said cover plate having a pair of depressions

therein for receiving slidable panels and a biasing means, the depressions surrounding the openings in said cover plate (the depressions for receiving slidable panels and biasing means are found on the front surface of the defendants' back plate rather than on defendants' cover plate);

d.  a pair of panels slidably mounted in the depressions in said cover plate (the defendants have a pair of panels slidably mounted in the depressions in the *back plate*);

e.  said panels having a raised portion projecting forwardly through said cover plate openings so as to be flush with the front surface of said cover plate, said raised portion having dimensions to allow only horizontal slidable movement of the panel in said cover plate (defendants' product has all of this element except that the raised portions are not quite flush with the cover plate);

f.  said panels further having apertures therein corresponding to the apertures in said receptacles, and in alignment therewith when said panels are in a use position (admitted by defendants);

g.  biasing means connected to the rearward side of said cover plate adapted to bias said panels from their use position where the panel apertures are aligned with the receptacle apertures, to a non-use position where the panel apertures are misaligned from their receptacle apertures (the defendants' device contains all of this structure but it is connected to the front of the back plate rather than the back of the front plate);

h.  a back plate having apertures therethrough corresponding with said receptacle apertures and in alignment therewith when the cover plate is attached to the outlet, said back plate fastened to the rearward surface of said cover plate, and enclosing said slidable panels and biasing means within said depressions in the cover plate (the defendants' device has all of this structure except that the defendants' depressions are originally formed on the

front of the back plate, rather than the back of the front plate); and

i.  means for removably attaching said cover plate to a conventional outlet (admitted by defendants).

30. The '916 patent includes eight claims. Claim 1 of the '916 patent is an independent claim. Claims 2 through 8 are dependent claims which ultimately depend on claim 1. Plaintiff contends that claims 1, 3 and 5 are infringed.

31. The plaintiff presented evidence of infringement in the form of an affidavit of an expert witness, Malcolm Moore.

32. Plaintiff asserts defendants' product infringes its '916 patent. Defendants deny infringement and aver that plaintiff's '916 patent is invalid.

## II. CONCLUSIONS OF LAW

### A. *Background*

1. The court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. §§ 1338, 2201 and 2202, and personal jurisdiction over the defendants. Venue is proper in this court.

2. Pursuant to 28 U.S.C. § 1295, this case involving patent infringement is under the appellate jurisdiction of the Court of Appeals for the Federal Circuit. Thus, the governing law includes that of the Federal Circuit and of its predecessor courts, the Court of Customs and Patent Appeals ("CCPA") and the Court of Claims. *South Corp. v. United States,* 690 F.2d 1368 (Fed. Cir.1982).

3. Plaintiff We Care, Inc. is, and at all relevant times has been, the owner of U.S. Patent No. 4,798,916 relating to an electrical outlet cover. The patent is presumed by the law to be valid and enforceable.

4. Defendants have manufactured approximately 200 electrical outlet covers under the name "Shock Block" and advertise them in direct competition with plaintiff, which plaintiff charges infringe claims 1, 3 and 5 of the '916 patent. Thus, the claims of the patent-in-suit at issue in this case are claims 1, 3 and 5.

## B. *Preliminary Injunction*

■ 5. To obtain a preliminary injunction, pursuant to 35 U.S.C. § 283, a party must establish a right thereto in light of four factors:

a. reasonable likelihood of success on the merits;

b. irreparable harm;

c. the balance of hardships tipping in its favor; and

d. the impact of the injunction on the public interest.

*Hybritech, Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1451 (Fed.Cir.1988). These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested. *Id.* at 1451; *see also Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1269 (Fed.Cir.1985).

### 1. Likelihood of Success on the Merits

6. The grant of a preliminary injunction does not require infringement be proved beyond all question, or that there be no evidence supporting the view of the accused infringer. *H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 390 (Fed.Cir.1987). Rather, the grant turns on the likelihood that: 1) We Care will meet its burden at trial of proving infringement, and 2) the defendants will be unable to prove the '916 patent is invalid. *Id.*

#### a. *Infringement*

7. Infringement is statutorily defined by 35 U.S.C. § 271:

Whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

■ 8. Plaintiff has the burden of showing that its patent has been infringed. Infringement may be shown by circumstantial evidence. *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 (Fed.Cir. 1986). *Alco Standard Corp. v. TVA,* 808 F.2d 1490, 1503 (Fed.Cir.1986).

■ 9. Infringement is determined solely by comparison of the claims of the patent at issue and the defendant's product.

*Yarway Corp. v. Eur–Control USA, Inc.,* 775 F.2d 268, 274 (Fed.Cir.1985); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1481–82 (Fed.Cir.1984).

■ 10. Infringement of patent claims may occur in either of two ways. If there is a direct correlation between the claims and the accused product—if every element of the claim may be identically found in the product—then literal infringement exists. *Builders Concrete v. Bremerton Concrete Prod.,* 757 F.2d 255, 257 (Fed.Cir.1985). If there is no literal infringement, the patentee may establish infringement under the "doctrine of equivalents" by proving that, even if defendants' outlet covers do not contain structure identical to one or more elements of the claims, the defendants' outlet covers perform substantially the same function in substantially the same way to obtain the same result. *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Builders Concrete* at 258.

■ 11. Although the defendants' structure does not literally infringe the claims of the '916 patent, the court finds the plaintiff has made a strong showing that at trial it will be able to prove, under the doctrine of equivalents, that defendants' Shock Block infringes patent '916. The doctrine of equivalents protects the patentee from devices that differ in name, form or shape from the patented invention, yet perform substantially the same function in substantially the same way to obtain substantially the same result as the claimed product or process. *See, Graver Tank* at 339 U.S. at 607, 70 S.Ct. at 855–56. The doctrine of equivalents serves the critical function of precluding an infringer from making insubstantial changes to avoid the literal claims, and still appropriate the heart of the invention.

12. Defendants' location of the pair of depressions on the front of the back plate for receiving the slidable panels and spring performs the same function in the same way and to achieve the same results as the pair of depressions on the back of the front plate of the '916 patent. Once the back

plate is fastened to the front plate, the defendants' structure functions identically to the recitations of claim 1 of the '916 patent. At this point in time, therefore, it appears highly likely that plaintiff will be able to prove at trial that defendants' product infringed its '916 patent.

### b. *Validity*

13. The plaintiff's patent is presumed to be valid by statute. 35 U.S.C. § 282 provides in pertinent part:

A patent shall be presumed valid. Each claim ... shall be presumed valid independently ... of other claims.... The burden of establishing invalidity of ... any claim ... shall rest on the party asserting such invalidity.

*See also Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1270 (Fed.Cir.1985). While the burden is always on the movant to demonstrate entitlement to a preliminary injunction, such entitlement is determined in the context of the presumptions and burdens that would inhere at trial on the merits. *H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 388 (Fed.Cir. 1987). Thus, as the burden of proving invalidity at trial would be on the defendants, plaintiff, as to the invalidity claim, must show a reasonable likelihood defendants will be unable to prove the '916 patent is invalid. *Id.* at 387–88.

14. The prior art asserted by defendants had either been considered by the United States Patent and Trademark Office ("PTO"), or is no more pertinent than that which the Examiner considered. When the prior art before the court is essentially the same as that before the PTO, the burden on the party asserting invalidity is more difficult to meet. *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.,* 796 F.2d 443, 447 (Fed.Cir.1986); *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1359 (Fed.Cir.1983).

15. In determining validity, claims of a patent must be construed to uphold their validity if possible. *Lewmar Marine, Inc. v. Barient, Inc.,* 827 F.2d 744, 749 (Fed.Cir.1987).

16. Defendants' argument as to invalidity is that plaintiff's interpretation of claim 1 under the doctrine of equivalents extends the scope of the claim so as to cover one or more devices disclosed in the prior art, such that plaintiff's patent would be anticipated by the prior art. The "defense" of anticipation derives principally from 35 U.S.C. § 102(a):

A person shall be entitled to a patent unless (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant.

A patent claim is invalidated for anticipation only if it is proven that every element of the claim, arranged as in the claim, is identically shown by a single prior art reference. *Diversitech Corp. v. Century Steps, Inc.,* 850 F.2d 675, 677 (Fed.Cir.1988) ("to anticipate ... every element of the claimed invention must be identically shown in a single reference.") A patent challenger must show by clear and convincing evidence that a claim is anticipated. *Id.* at 677. *See also Atlas Powder Co. v. E.I. duPont De Nemours & Co.,* 750 F.2d 1569, 1574 (Fed.Cir.1984); *Kalman v. Kimberly–Clark Corp.,* 713 F.2d 760, 772 (Fed.Cir. 1983) (no anticipation where "one element of the claimed invention was not disclosed in [the prior art reference]"); *Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1571 (Fed.Cir.1986) ("absence from the [prior art] reference of any claimed element negates anticipation").

17. The court has compared the prior art defendants provided in exhibits A–H (the Hoessel, Huber, Fitzpatrick, Meistrell, Kubik, Cohen, Dola and Hill patents) to plaintiff's claim 1. The court finds that the defendant will be unable to prove that any one of these references identically shows every element of plaintiff's claim. Therefore, it concludes plaintiff has made a strong showing that the defendants will be unable to prove at trial that patent '916 is invalid.

### 2. Irreparable Harm to the Plaintiff

18. The plaintiff must show not only a reasonable likelihood of success on the

merits, but also the lack of adequate remedy at law or irreparable harm. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed.Cir.1987).

19. In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement. *Id.; Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed.Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). The court in *H.H. Robertson* explained the reasoning behind this presumption.

> This presumption derives in part from the finite form of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm. The opportunity to practice an invention during the notoriously lengthy course of patent litigation may itself tempt infringers ... The nature of the patent grant thus weighs against holding that monetary damages will always suffice to make the patentee whole, for the principal value of a patent is its statutory right to exclude.

*Id.* at 390 (cites omitted).

The federal circuit on the subject of the sufficiency of money damages in patent cases has noted:

> The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have marked effects never fully compensable in money. 'If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts.'

*Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1457 (Fed.Cir.1988) (quoting *Atlas Powder v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed.Cir.1985)).

20. As plaintiffs have made a strong showing of likelihood of success on the merits, and in light of patent law policy, irreparable harm to the plaintiffs is presumed.

21. Defendants argue that monetary damages would adequately compensate the plaintiff for any infringement by the defendants. This court cannot agree. Continued infringement by the defendants would be more harmful to a small company like We Care than a large corporation. Monetary relief is insufficient to compensate plaintiff against future infringement since such future infringement by defendants could affect We Care's ability to continue in business. As noted above, the patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money. *Atlas Powder*, at 1233.

22. In addition, plaintiff and defendants, before this litigation, were involved in negotiating terms of a possible arrangement where defendants would market plaintiff's product. Negotiations were terminated when an agreement could not be reached. A denial of an injunction in effect would force the plaintiff to license the defendants to produce and market an outlet cover which defendants could not otherwise license from plaintiff. *See Atlas Powder*, 773 F.2d at 1233.

23. Therefore, even if plaintiff had made only a "reasonable" rather than a strong showing of success on the merits, the court would find plaintiff had met its burden of proving irreparable harm.

### 3. Balance of Hardships

24. The court must balance the harm that will occur to the moving party from the denial of a preliminary injunction with the harm that the non-moving party will incur if the injunction is granted. *See H.H. Robertson*, 820 F.2d at 390.

25. Although the federal circuit has cited the "balance of hardships tipping in favor of the movant," as one of the four factors *to be considered* by a district court in determining whether to issue a preliminary injunction, it has never required, as a prerequisite to awarding preliminary relief, that the district court expressly find the existence of this factor. *Hybritech*, 849 F.2d at 1446.

26. The defendants contend that they have already entered into an agreement to sell the rights to its Shock Block to a local

manufacturer and marketer of home improvement products. They argue if the injunction is granted, they will not be able to sell the rights to Shock Block and their business will be severely disrupted. The defendants have themselves only produced 200 outlet covers and have sold none.

27. Comparing the hardships, the court concludes they tip in the plaintiff's favor as denying an injunction could affect the viability of the We Care corporation.

### 4. Impact of the Injunction on the Public Interest

██ 28. Typically, in a patent infringement case, although there exists a public interest in protecting the rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief. *Hybritech*, 849 F.2d at 1458; *see Broomall Industries, Inc. v. Data Design Logic Systems (Datascope)*, 786 F.2d 401, 401 (Fed.Cir.1986).

29. Defendants urge that the public interest would best be served by denying plaintiff's motion because the product involved in this lawsuit is an electrical outlet cover whose primary function is to protect children from electrocution. It contends plaintiff does not possess marketing skills to make its product available to a large number of consumers. Comparing the public interest in protecting rights secured by the '916 patent to potential harm to the public interest alleged by the defendants, the court cannot conclude the latter outweighs the former. To begin with, while this is a safety product, the public interest in its development cannot be said to be "critical." As the prior art presented by defendants shows, a number of similar protective devices are already present in the marketplace. Furthermore, just because the defendants may have the ability to market their product more widely than plaintiff does not justify denying plaintiff's motion for a preliminary injunction.

### III. CONCLUSION

The court finds that plaintiff has established a right to a preliminary injunction pursuant to 35 U.S.C. § 283.

Accordingly,

IT IS HEREBY ORDERED That plaintiff's motion for a preliminary injunction is GRANTED.

IT IS FURTHER ORDERED That upon plaintiff posting a bond in the sum of Ten Thousand ($10,000.00) Dollars, a preliminary injunction in the form attached shall issue.

### PRELIMINARY INJUNCTION

IT IS HEREBY ORDERED That defendants Ultra–Mark International Corporation, Steven E. Hemping, Marco Associates International, Bruce Gibis, Seifert Sales, Inc., and Lloyd A. Leirdahl are enjoined from making, using and/or selling apparatuses embodying the invention of U.S. Letters Patent No. 4,798,916, namely the product entitled "Shock Block."