930 F.2d 1567
 18 U.S.P.Q.2d 1562
 WE CARE, INC., Plaintiff-Appellee,
v.
ULTRA-MARK INTERNATIONAL CORP., a Minnesota corporation;
Steven E. Hemping, an individual; Minnfac, Inc., a
Minnesota corporation; Marcos Associates International;
Bruce Gibis, an individual; Siefert Sales, Inc., a
Minnesota corporation; and Lloyd A. Leirdahl, an
individual, Defendants-Appellants.
 No. 90-1242.
 United States Court of Appeals,
Federal Circuit.
 April 17, 1991.
 
 Mark D. Fredericksen, Zarley, McKee, Thomte, Voorhees & Sease, Omaha, Neb., submitted for plaintiff-appellee. With him on the brief was Dennis L. Thomte.
 David R. Fairbairn, Kinney & Lange, P.A., Minneapolis, Minn., submitted for defendants-appellants. With him on the brief were Thomas J. Stueber and Joseph R. Kelly.
 Before ARCHER, Circuit Judge, MILLER, Senior Circuit Judge, and MICHEL, Circuit Judge.
 ARCHER, Circuit Judge.
 
 
 1
 Appellants, Ultra-Mark International Corp., et al. (Ultra-Mark), appeal the grant of a preliminary injunction by the United States District Court for the District of Minnesota, We Care, Inc. v. Ultra-Mark Int'l Corp., et al., 741 F.Supp. 743, 14 USPQ2d 1804 (D.Minn.1989), enjoining Ultra-Mark from making, using, or selling the SHOCK BLOCK electrical outlet cover. We vacate the preliminary injunction and remand.
 
 
 2
 * On August 23, 1989, We Care, Inc. (We Care) filed suit against Ultra-Mark, its distributors, and certain individuals, claiming infringement of United States Patent No. 4,798,916 (the '916 patent).[1] The '916 patent, entitled "Safety Plate For Electrical Outlet," issued to S.M. Engel and W.W. Weiger in 1989 and was assigned to We Care. The patent discloses and claims a safety plate device that fits over an electrical outlet to cover the outlet's receptacles when they are not in use. The patented device consists of two plates (a cover plate and a back plate) with two horizontally sliding panels sandwiched between them. The back of the cover plate has depressions which hold the two sliding panels in place. The sliding panels, which are flush with the front of the cover plate, contain openings in the precise configuration of those in the receptacles of an electrical outlet. When the outlet is in use the openings in the sliding panel are aligned with those in the receptacle and the prongs of a plug may be inserted; when not in use a spring keeps the panel in a position so that no direct passage exists to the receptacle. According to the patent specification, the invention prevents children from inserting foreign objects into the outlet and conserves energy by preventing air infiltration through the cover. The invention is illustrated in the '916 patent as follows:
 
 
 3
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 4
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLEIn its infringement suit, We Care also sought a preliminary injunction to prevent Ultra-Mark from manufacturing and selling the SHOCK BLOCK device while the suit was pending. The district court did not find it likely that We Care could prove literal infringement. The court, however, granted the injunction based on the finding that We Care was likely to prove infringement at trial under the doctrine of equivalents. This finding is the only issue before us on review.
 
 II
 
 5
 A. The grant or denial of a preliminary injunction is within the discretionary authority of the trial court. Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1578, 219 USPQ 686, 690 (Fed.Cir.1983). The court's determination can be overturned only on a showing that it abused its discretion, committed an error of law, or seriously misjudged the evidence. H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 387, 2 USPQ2d 1926, 1927 (Fed.Cir.1987).
 
 
 6
 To obtain a preliminary injunction pursuant to 35 U.S.C. Sec. 283, a party must establish a right thereto in light of four factors: (1) a reasonable likelihood of succeeding on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships tipping in petitioner's favor; and (4) the impact of the injunction on the public interests. Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988). The district court considered whether Ultra-Mark would be able to prove facts requiring a conclusion that the '916 patent is invalid[2] and, if not, whether We Care would meet its burden at trial of proving that the accused SHOCK BLOCK device infringed the '916 patent. The court determined that We Care would probably not be able to prove literal infringement. We Care, 741 F.Supp. at 748-49, 14 USPQ2d at 1808-09. The court based this noninfringement holding on two differences between the invention disclosed in the '916 patent and Ultra-Mark's SHOCK BLOCK device: (1) the sliding panels of the patented invention are mounted on the back of the front panel, while the SHOCK BLOCK device has the sliding panels mounted on the front of the back panel; and (2) the sliding panels of the patented invention are flush with the front of the cover plate, while the SHOCK BLOCK's panels are not. Id.
 
 
 7
 B. Although We Care could not show literal infringement, the court determined that We Care would likely be able to prove that the SHOCK BLOCK device infringed the '916 patent under the doctrine of equivalents. In applying this doctrine, however, we are convinced that the district court erred in not adequately considering whether the range of equivalents sought by We Care for the '916 patent would "ensnare the prior art." Wilson Sporting Goods Co. v. David Geoffrey & Assocs., 904 F.2d 677, 685, 14 USPQ2d 1942, 1949 (Fed.Cir.1990).
 
 
 8
 In Sun Studs, Inc. v. ATA Equip. Leasing, Inc., 872 F.2d 978, 986, 10 USPQ2d 1338, 1345 (Fed.Cir.1989), this court stated that "[e]quivalency is determined in the light of prior art, the patent specification, and the prosecution history, as the accused systems are tested by the standards set forth in Graver Tank & Mfg. Co. v. Linde Air Prods. Co." (emphasis added). In Wilson Sporting Goods Co., the court explained precisely how the prior art restricts the range of equivalents, as follows:
 
 
 9
 [A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims. The doctrine of equivalents exists to prevent a fraud on a patent, Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 [70 S.Ct. 854, 856, 94 L.Ed. 1097] (1950), not to give a patentee something which he could not lawfully have obtained from the PTO had he tried. Thus, since prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim.
 
 
 10
 904 F.2d at 684, 14 USPQ2d at 1948 (emphasis in original). Thus, a determination of infringement based on this doctrine cannot be made in a vacuum; the prior art must be examined to assure that the range of equivalents asserted by the patent holder does not encroach upon subject matter in the prior art. See Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc., 906 F.2d 698, 704, 15 USPQ2d 1295, 1299 (Fed.Cir.1990). This, of course, involves consideration of what the prior art would have anticipated, 35 U.S.C. Sec. 102, and what the prior art would have made obvious, 35 U.S.C. Sec. 103, when the patentee filed the original application. In this way, the doctrine of equivalents is limited; it may not be used to extend a patent holder's right to exclude beyond what could lawfully have been obtained in an original application. See, e.g., Wilson Sporting Goods, 904 F.2d at 684, 14 USPQ2d at 1948.
 
 
 11
 C. In this case, the district court applied Graver Tank, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), and determined that the SHOCK BLOCK device performs substantially the same function in substantially the same way to obtain substantially the same result as the invention claimed in the '916 patent. We Care, 741 F.Supp. at 748, 14 USPQ2d at 1808. Ultra-Mark contended in the district court that the '916 patent claims could not obtain a range of equivalents covering Ultra-Mark's SHOCK BLOCK device without also covering one or more prior art devices. Id. at 749, 14 USPQ2d at 1808-09. As a result, the court considered whether claims of the '916 patent, "extend[ed]"[3] by the doctrine of equivalents broadly enough to read on the SHOCK BLOCK device, would have been anticipated by the prior art. This analysis was performed in connection with the court's validity analysis. The district court concluded that every element of independent claim 1 of the '916 patent, as "extend[ed]" by the doctrine of equivalents, was not identically disclosed by any one of the eight relevant prior art patents for electrical outlet covers. It found:
 
 
 12
 The court has compared the prior art defendants provided in exhibits A-H (the Hoessel, Huber, Fitzpatrick, Meistrell, Kubik, Cohen, Dola and Hill patents) to plaintiff's claim 1. The court finds that the defendant will be unable to prove that any one of these references identically shows every element of plaintiff's claim.
 
 
 13
 Id. at 749, 14 USPQ at 1809.
 
 
 14
 The district court's analysis did not go far enough. The court failed to consider whether the teachings of these eight patents would have made obvious the range of equivalents afforded the '916 claims. On the record before us, we cannot determine what the eight cited prior art patents teach or whether, based on those teachings, claims broad enough to encompass the SHOCK BLOCK device would have been obvious. See Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 875, 228 USPQ 90, 99 (Fed.Cir.1985) (case remanded when district court failed to make factual findings necessary for obviousness determination). We conclude that the court erred in not considering in an obviousness context whether a range of equivalents broad enough to find infringement by the SHOCK BLOCK device was permissible.
 
 
 15
 Accordingly, we vacate the preliminary injunction and remand the case to the district court to determine whether the range of equivalents sought by We Care encroaches upon the prior art.
 
 COSTS
 
 16
 Each party shall bear its own costs.
 
 
 17
 VACATED AND REMANDED.
 
 
 
 [1]
 The '916 patent includes eight claims with claim 1 being the only independent claim. It reads as follows:
 
 
 [1]
 A safety plate for a conventional electrical outlet of the type having a pair of receptacles, each receptacle having apertures therein for receiving the prongs of an electrical plug, comprising:
 a cover plate having a pair of vertically aligned openings therethrough, the openings located so as to be centered over the receptacles of an outlet when the cover plate is fastened thereto;
 said cover plate having a front surface, rearward surface, and a rearwardly projecting lip extending around the perimeter thereof;
 the rearward surface of said cover plate having a pair of depressions therein for receiving slidable panels and a biasing means, the depressions surrounding the openings in said cover plate;
 a pair of panels slidably mounted in the depressions in said cover plate;
 said panels having a raised portion projecting forwardly through said cover plate openings so as to be flush with the front surface of said cover plate, said raised portion having dimensions to allow only horizontal slidable movement of the panel in said cover plate;
 said panels further having apertures therein corresponding to the apertures in said receptacles, and in alignment therewith when said panels are in a use position;
 biasing means connected to the rearward side of said cover plate adapted to bias said panels from their use position where the panel apertures are aligned with the receptacle apertures, to a non-use position where the panel apertures are misaligned from the receptacle apertures;
 a back plate having apertures therethrough corresponding with said receptacle apertures and in alignment therewith when the cover plate is attached to the outlet, said back plate fastened to the rearward surface of said cover plate, and enclosing said slidable panels and biasing means within said depressions in the cover plate; and
 means for removably attaching said cover plate to a conventional outlet.
 
 
 [2]
 The trial court found it unlikely that, at trial, Ultra-Mark would be able to prove the '916 patent invalid. We Care, 741 F.Supp. at 748-49, 14 USPQ2d at 1808-9. Ultra-Mark has not challenged this determination
 
 
 [3]
 We Care, 741 F.Supp. at 749, 14 USPQ2d at 1808. In Wilson Sporting Goods this court instructed against speaking of the doctrine of equivalents as "extend[ing] or enlarg[ing] the claims." The language, and thus the breadth, of the claims never changes. "[A]pplication of the doctrine expands the right to exclude to 'equivalents' of what is claimed." Wilson Sporting Goods, 904 F.2d at 684, 14 USPQ2d at 1948 (emphasis in original)