Jay F. BRAINARD, Plaintiff,

v.

CUSTOM CHROME, INC., Jockey Cycle Traffic Supply Co., Ltd., Sentry Traffic Supply Co., Ltd., Mountain Cycle Traffic Supply Co., Ltd., and Frank Lin, Defendants.

No. 94–CV–488S.

United States District Court, W.D. New York.

Dec. 28, 1994.

Peter K. Sommer, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for plaintiff.

H. Kenneth Schroeder, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for defendants.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Before this Court is plaintiff's motion pursuant to Fed.R.Civ.P. 65 for a preliminary injunction enjoining and restraining defendants from infringing plaintiff's design patent during the pendency of this action. Plaintiff filed a complaint on June 30, 1994, alleging that defendants have infringed plaintiff's patent for a motorcycle throttle grip by making, using, or selling a certain motorcycle throttle grip during the term of plaintiff's patent. Plaintiff seeks a declaratory judgment, injunction, and damages under 35 U.S.C. §§ 284, 289. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338.

In support of his motion for a preliminary injunction, plaintiff has submitted a memorandum of law ("P. Memo"); a reply memorandum of law ("P.R.Memo"); an affidavit of Jay F. Brainard ("Brainard Aff."), with exhibits; an affidavit of Richard J. Miller ("Miller Aff."), with exhibits; and an affidavit of David S. Teske ("Teske Aff."), with exhibits. In opposition to plaintiff's motion, defendant Custom Chrome, Inc. ("Custom Chrome") has submitted a memorandum of law ("D. Memo"); a declaration of Steven D. Dennison ("Dennison Dec."), with exhibits; and a declaration of Harris Zimmerman ("Zimmerman Dec."), with exhibits.

At oral argument before this Court on December 5, 1994, counsel for both parties agreed that their submissions were sufficient for this Court to decide the matters raised on this motion. After full and careful consideration of the parties' submissions and argument, this Court agrees with that assessment and, for the reasons set forth below, will deny plaintiff's motion for a preliminary injunction.

### FACTS

Plaintiff Jay Brainard is the president of Jaybrake Enterprises, Inc. ("Jaybrake"), headquartered in Lewiston, New York. (Brainard Aff. ¶ 1.) Jaybrake designs and produces after-market accessories for motorcycles. (Miller Aff. ¶ 4.) On March 25, 1992, plaintiff filed an application (Serial Number 857,593) in the United States Patent and Trademark Office ("PTO") for a design patent for a motorcycle throttle grip. (Brainard Aff. ¶¶ 4–5.) United States Design Letters Patent No. D–338,825 ("'825 patent") issued to plaintiff on August 31, 1993. (Brainard Aff. ¶ 6.) Plaintiff describes his motorcycle grip design as:

> About six to eight rounded circumferentially-spaced longitudinally-extending ... cushioning strips that extend radially outwardly beyond the outer surface of a tubular cylindrical ... body so as to create the impression of alternating ... strips of approximately equal circumferential width, with the cushioning strips extending substantially the entire length of the body between a semi-circular end and an opposite flat end, and a slightly convex rounded distal end cap.[1]

(Brainard Aff. ¶ 8; P. Memo, p. 4.)

Defendant Custom Chrome sells motorcycle parts and accessories for Harley–Davidson motorcycles through catalogs. (Miller Aff. ¶ 4, exh. A; D. Memo, p. 1.) Plaintiff alleges that a certain motorcycle handgrip ("accused grip") that Custom Chrome sells by catalog infringes his design patent.[2] (Miller Aff. ¶ 4, exh. A.) Specifically, he asserts "that the accused grip manufactured by

---

1. Plaintiff's counsel at oral argument requested that words the "rubber-like," "polished metal," and "light and dark" be redacted from the design description in plaintiff's papers.

2. Both plaintiff's design patent and photographs of the accused grip are contained as exhibits in the Declaration of Harris Zimmerman. (Zimmerman Dec. ¶¶ 3–5, exhs. 2–5.) The affidavit of Richard Miller also contains of photocopy of a photograph of the accused grip. (Miller Aff. ¶ 10, exh. G.)

Jockey Cycle Traffic Supply Co., Ltd., Sentry Traffic Supply Co., Ltd., Mountain Cycle Traffic Supply Co., Ltd., and/or Frank Lin and sold in the United States by Custom Chrome, Inc. substantially resembles the design shown in the '825 patent." (Brainard Aff. ¶ 9.)

## DISCUSSION

Defendant Custom Chrome contends that the accused grip it sells does not infringe plaintiff's patent, and that plaintiff therefore has not met his burden on this motion. Based on the findings of fact and conclusions of law set forth below pursuant to Fed. R.Civ.P. 52, plaintiff has not met his burden, and this Court will deny his motion for a preliminary injunction.

### Preliminary Injunction Standard

■ The grant or denial of a preliminary injunction is within the discretionary authority of the district court. *Smith International, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1578 (Fed.Cir.1983). Injunctions may be granted under principles of equity to "prevent the violation of any rights secured by patent, on such terms as the Court deems reasonable." 35 U.S.C. § 283. The law of the Federal Circuit, rather than the Second Circuit, provides the standards governing the issuance of an injunction under 35 U.S.C. § 283:

> [T]o obtain a preliminary injunction, pursuant to 35 U.S.C. § 283, a party must establish a right thereto in light of four factors: (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) the balance of hardships tipping in its favor; and (4) the impact of the injunction on the public interest.

*Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1451 (Fed.Cir.1988); *We Care, Inc. v. Ultra–Mark International Corp.,* 930 F.2d 1567, 1570 (Fed.Cir.1991).

"These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech,* 849 F.2d at 1451.

### A. Reasonable Likelihood of Success on the Merits

■ Plaintiff has not demonstrated a reasonable likelihood of success on the merits of his claim of patent infringement. The Supreme Court established the test for determining infringement of a design patent more than one hundred years ago. The test requires that

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Manufacturing Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1872). A two-part test for infringement applies to a design patent claim under *Gorham.* First, the accused design must appropriate the point of novelty of the patented design. *See Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1565 (Fed. Cir.1988). Second, the accused design must be substantially the same as the patented design. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1125 (Fed.Cir.1993); *Shelcore, Inc. v. Durham Industries, Inc.,* 745 F.2d 621, 628 (Fed.Cir.1984).

### 1. Point of Novelty

■ Under the point of novelty test, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Avia Group International,* 853 F.2d at 1565 (quoting *Shelcore,* 745 F.2d at 628 n. 16; *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed. Cir.1984)).

Plaintiff contends that the point of novelty of his patent is:

> About six to eight rounded circumferentially-spaced longitudinally-extending ... cushioning strips that extend radially outwardly beyond the outer surface of a tubular cylindrical ... body so as to create the impression of alternating ... strips of approximately equal circumferential width, with the cushioning strips extending substantially the entire length of the body

between a semi-circular end and an opposite flat end, and a slightly convex rounded distal end cap.

(P. Memo, p. 4.) Defendant Custom Chrome argues that the only point of novelty of plaintiff's design is the circumferential band or "ring-like appearance at the open end of the grip." (D. Memo, p. 4.) All other features of plaintiff's design, it argues, are found in the prior art. (D. Memo, p. 3.) Plaintiff claims that Custom Chrome erroneously attacks point of novelty on a piecemeal basis rather than assessing point of novelty as a combination of features. (P. R.Memo, pp. 1–2.)

Under the point of novelty test, "even though the court compares two items through the eyes of the ordinary observer, it must nevertheless, to find infringement, attribute their similarity to the novelty which distinguishes the patented design from the prior art." *Litton Systems,* 728 F.2d at 1444. The purpose of the "point of novelty" approach "is to focus on those aspects of a design which render the design different from prior art designs." *Winner International Corp. v. Wolo Manufacturing Corp.,* 905 F.2d 375, 376 (Fed.Cir.1990); *see also Litton Systems,* 728 F.2d at 1444. "To consider the overall appearance of a design without regard to prior art would eviscerate the purpose of the 'point of novelty' approach." *Winner,* 905 F.2d at 376.

Plaintiff's description of the point of novelty that differentiates his grip design from the prior art is too broad. The 1982 Japanese Patent 175,481 ("'481 patent") (Zimmerman Dec. ¶ 12, exh. 6) depicts most of the features that plaintiff contends are, in combination, his point of novelty. Specifically, the '481 patent shows a motorcycle throttle grip having about six to eight rounded circumferentially-spaced longitudinally extending strips that extend slightly radially outwardly beyond the outer surface of a tubular cylindrical body so as to create the impression of alternating strips of approximately equal circumferential width, with the strips extending substantially the entire length of the body. The '481 patent has circumferential rings at an outwardly flared open end.

Plaintiff's patent, in contrast, has one latitudinal band at an open end with no enlargement of diameter. The point of novelty of plaintiff's patent is the six to eight rounded circumferentially-spaced longitudinally-extending strips that extend slightly radially outwardly beyond the outer surface of a tubular cylindrical body in combination with one rounded latitudinal band extending slightly outwardly beyond the outer surface of and circumscribing the open end of a tubular cylindrical body with no enlargement of diameter at its open end.

The accused design does not appropriate that point of novelty. While it has longitudinally-extending strips, like plaintiff's design and the '481 patent, it does not have a latitudinal band circumscribing an open end with no enlargement of diameter. Rather, the accused design has a slightly flaring open end similar to the '481 patent and the 1985 Japanese Patent 121,985 (Zimmerman Dec. ¶ 12, exh. 7.) Since the scope of protection that the '825 patent affords plaintiff's design is limited to the six to eight longitudinally extending strips in combination with the circumscribing band at the open end with no enlargement of diameter, the accused design does not appropriate plaintiff's point of novelty. As such, plaintiff has not demonstrated a reasonable likelihood of success on the issue of patent infringement. "For a design patent to be infringed ... no matter how similar two items look, 'the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art.'" *Litton Systems,* 728 F.2d at 1444 (quoting *Sears, Roebuck & Co. v. Talge,* 140 F.2d 395, 396 (8th Cir.1944)).

### 2. *Overall Similarities and Differences*

██ "While the accused device must appropriate the novelty that distinguished the patented design from the prior art (citations omitted), the ultimate question requires determining whether 'the effect of the whole design [is] substantially the same.'" *Thom McAn Shoe Co.,* 988 F.2d at 1125 (quoting *Gorham,* 81 U.S. at 530, 20 L.Ed. 731). Though this Court need not decide this question since the accused design does not appropriate the point of novelty of plaintiff's de-

sign, I find that there are significant differences between the patented design and the accused design.

Plaintiff relies on a videotaped survey it conducted to show that an ordinary observer would perceive the two designs to be substantially the same. The videotape (Miller Aff. ¶ 6, exh. B) depicts twenty-one individuals responding to whether certain motorcycle throttle grips "resemble," "substantially resemble," or "substantially look like" what appears to be a drawing of plaintiff's patented design. This "survey" is wholly unscientific, highly suggestive, and of no use to resolving the issues raised on this motion.

There are, in fact, significant differences between the patented design and the accused design. "Courts should take into account similarities *and* differences in determining 'if in the eye of an ordinary observer ... two designs are substantially the same....'" *FMC Corp. v. Hennessy Industries*, 836 F.2d 521, 527 (Fed.Cir.1987) (quoting *Gorham*, 81 U.S. at 530, 20 L.Ed. 731). As already explained, the accused design has a flaring open end. Plaintiff's design does not. The open end of plaintiff's design has a latitudinal circumscribing band, which the accused design does not. Plaintiff's design has six longitudinal bands. The accused design has eight. The eight longitudinal bands on the accused design radiate from the open end and are rounded off short of the cap on the closed end. The six longitudinal bands on plaintiff's design radiate from the cap on the closed end and are rounded off short of the circumscribing band on the open end. Plaintiff's "survey" notwithstanding, this Court, applying the "eye of the observer test," finds that the two devices are not "substantially the same."

Since the accused design has not appropriated the point of novelty of plaintiff's design, and, since the two designs are not substantially the same, plaintiff has not established a reasonable likelihood of success on the merits.

## B. *Irreparable Harm*

█ Plaintiff correctly argues that "[i]n matters involving patent rights, irreparable harm has been presumed when a clear show-

ing has been made of patent validity and infringement." *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir.1987); *Smith International*, 718 F.2d at 1581. (P. Memo, p. 6.) Plaintiff has not, however, for the reasons explained above, made a clear showing of infringement. "[W]ithout a clear showing of validity and infringement, a *presumption* of irreparable harm does not arise in a preliminary injunction proceeding." *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed.Cir.1991); *Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 400 (Fed.Cir.1986). Other than claiming he is entitled to this presumption, plaintiff presents no evidence of irreparable harm.

## C. *Balance of Hardships & Public Interest*

In light of the fact that plaintiff has not demonstrated a likelihood of success on the merits, the magnitude of the injury to the accused infringer if an injunction issues outweighs the threatened injury to plaintiff. *See H.H. Robertson, Co.*, 820 F.2d at 391. Further, without a reasonable likelihood of success on the merits or some showing of irreparable harm, granting an injunction would adversely impact on the public interest.

## CONCLUSION

After weighing and measuring plaintiff's likelihood of success on the merits, irreparable harm, the balance of hardships, and the public interest, this Court will deny plaintiff's motion for a preliminary injunction for the reasons set forth above.

## ORDER

IT HEREBY IS ORDERED, that plaintiff's motion for a preliminary injunction is DENIED.

SO ORDERED.